Clinton N. HARRIS, Defendant Below–Appellant,

v.

STATE of Delaware, Plaintiff Below–Appellee.

No. 125, 2008.

Supreme Court of Delaware.

Submitted: July 18, 2008.
Decided: Aug. 28, 2008.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, DE, for appellant.

Loren C. Meyers, Esquire, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice,
JACOBS, and RIDGELY, Justices.

RIDGELY, Justice:

Defendant–Appellant Clinton N. Harris appeals his conviction and sentence for a crime to which he pled guilty on January 3, 2001, for which he was not sentenced until February 8, 2008. Harris argues that his motion to dismiss the indictment should have been granted because the delay in sentencing violated his right to a speedy trial and due process. He further argues that, in the alternative, he should have been permitted to withdraw his guilty plea because it was plain error for the Superior Court to sentence him in excess of the sentencing recommendation. In denying his motion to dismiss, the Superior Court characterized this case as one which "fell through the cracks."[1] We continue to assume that the Sixth Amendment to the United States Constitution requires a speedy sentencing and find that the sentencing delay in this case violated Harris's rights under that Amendment. Because we reverse on that ground, Harris's remaining arguments are moot.

## Facts

Harris, with the assistance of his counsel, pled guilty to unlawful sexual contact in the first degree on January 3, 2001. Following a pre-sentence investigation, Harris was scheduled to be sentenced on March 16, 2001. The sentencing was continued at Harris's request because he wanted to withdraw his guilty plea. According to his defense counsel, Harris "became unhappy subsequent to the entry of the plea and wanted to withdraw the guilty plea." Because he was the one who negotiated the plea, Harris's counsel suggested Harris contact other counsel. The State did not seek a new sentencing date, and nothing happened with Harris's case for six years, until October 22, 2007, when a summons was mailed to Harris informing him that he was to be sentenced on November 2, 2007. Both Harris and his same counsel from 2001, appeared and requested a continuance to file a motion to dismiss the indictment. A continuance was granted. In his motion to dismiss, Harris argued that the delay in his sentencing violated his Sixth Amendment right to a speedy sentencing and due process. He argued that in deciding whether his rights to a speedy sentencing were violated,[2] the Court should apply the same four-factor test articulated by the United States Supreme Court in *Barker v. Wingo*,[3] and recognized by this Court in *Middlebrook v. State*.[4] The Superior Court applied the four-factor *Barker* test and denied Harris's motion. On February 8, 2008, the Superior Court sentenced Harris to two years at Level V, suspended for eighteen months at Level I probation.[5] This appeal followed.

## Discussion

Harris first argues that the nearly seven year delay in his sentencing violated his constitutional rights to due pro-

1. *State v. Harris,* 2008 WL 43700, at *1 (Del.Super.).

2. The State agreed that the *Barker* four-factor test was the appropriate standard. *Harris,* 2008 WL 43700, at *1.

3. 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

4. 802 A.2d 268, 273 (Del.2002). *Accord Dabney v. State,* 953 A.2d 159, 2008 WL 2169017, at *4 (Del.2008); *Page v. State,* 934 A.2d 891, 896 (Del.2007).

5. The provisions of 11 *Del. C.* § 4120, 4121, and 4336 applied to this case.

cess and a speedy trial. We review an alleged infringement of a constitutional right *de novo*.[6] In 1973, this Court in *Johnson v. State* noted that there was no United States Supreme Court decision concerning whether the Sixth Amendment right to a speedy trial encompasses the right to a speedy sentencing.[7] That situation has not changed.[8]

■■■■ Assuming that the Sixth Amendment requires speedy sentencing, as we did in *Johnson*, we analyze an allegedly unconstitutional delay in sentencing the same way as the asserted denial of the right to a speedy trial.[9] The "right to a speedy trial is a more vague concept than other procedural rights" and it is "impossible to determine with precision when the right has been denied."[10] Thus, "any inquiry into a speedy trial claim necessitates a functional analysis of the right" on a case-by-case basis.[11] A case-by-case analysis also applies to an inquiry into a speedy sentencing claim. Examination of an alleged infringement of the right to a speedy sentencing requires considering the conduct of both the State and the defendant, looking primarily at (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant because of the delay.[12] These factors are related and "must be considered together with other circumstances as may be relevant."[13] Unlike a speedy trial claim, however, "a delay in sentencing involves considerations different from those related to pre-trial delay. The alteration of defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process."[14] The Superior Court correctly recognized that

6. *Dabney*, 953 A.2d 159, 2008 WL 2169017, at *4,; *Page*, 934 A.2d at 896; *accord Capano v. State*, 781 A.2d 556, 668 (Del.2001); *Forrest v. State*, 721 A.2d 1271, 1277 (Del.1999).

7. *Johnson v. State*, 305 A.2d 622 (Del.1973). This Court reaffirmed the *Johnson* approach in *Key v. State*, 463 A.2d 633, 636 (Del.1983) and *Boyer v. State*, 2003 WL 21810824, at *2 (Del.Supr.). *Accord Bodnari v. State*, 2003 WL 22880372, at *3 (Del.Supr.).

8. The Supreme Court of Arkansas recently examined the issue and noted that at least seventeen jurisdictions and almost every circuit court of appeals that has addressed the issue has applied the same approach as in our Court. *See Jolly v. Arkansas*, 358 Ark. 180, 189 S.W.3d 40, 43 (2004) (citing cases), *cert. denied*, 544 U.S. 948, 125 S.Ct. 1695, 161 L.Ed.2d 524 (2005). *See also United States v. Campisi*, 583 F.2d 692, 694 (3d Cir.1978) (applying the *Barker* balancing test to the assertion of an unconstitutional delay in sentencing, on the assumption that the constitutional right to a speedy trial includes the right to a speedy sentence).

9. *Key*, 463 A.2d at 636. *See also Barker*, 407 U.S. at 530, 92 S.Ct. 2182 ("A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right.").

10. *Barker*, 407 U.S. at 521, 92 S.Ct. 2182.

11. *Id.* at 522, 92 S.Ct. 2182.

12. *Key*, 463 A.2d at 636; *accord Boyer*, 2003 WL 21810824, at *3; *Johnson*, 305 A.2d at 623; *see also Barker*, 407 U.S. at 530–33, 92 S.Ct. 2182.

13. *Key*, 463 A.2d at 636 (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. 2182). Superior Court Criminal Rule 32(a) also requires that the "[s]entence shall be imposed without unnecessary delay...." The *Barker* factors are an appropriate method to determine whether the delay was unnecessary, and thereby unconstitutional.

14. *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir.1986). *See also id.* ("Once guilt has been established in the first instance the balance between the interests of the individual and those of society shift proportionately.").

the four *Barker* factors must balance in Harris's favor to find an infringement of the right to a speedy sentencing. After balancing the factors, the Superior Court decided that Harris's right to a speedy sentencing was not infringed in this case. We disagree.

The threshold factor, the length of the delay, strongly weighs in Harris's favor because he pled guilty on January 3, 2001 and was not scheduled to be sentenced until November 2, 2007.[15] The State does not dispute that this extraordinary delay from Harris's guilty plea to his sentencing warrants an inquiry into the other factors. The Superior Court found that this factor weighed in Harris's favor. We agree.

The second factor, the reason for the delay, also weighs in Harris's favor. In examining this factor, this Court has explained that the spectrum of reasons the State asserts for the delay may range from inadvertence to deliberate acts, and in the case of the former, judicial tolerance is often appropriate.[16] "Different weights are assigned to different reasons for the delay."[17] "[B]enign reasons for trial delays weigh less heavily against the State."[18] "[A] valid reason may justify appropriate delay and will not weigh against the State at all."[19] If the defendant is the primary cause for the delay, this factor will weigh against him, in part because a defendant may be in a better negotiating position as witnesses (for the State or the defense) become unavailable or their memories fade.[20]

Here, the record is devoid of any reason for why no activity occurred in Harris's case from March 16, 2001, when the Superior Court granted Harris's request for a continuance, until October 22, 2007, when the court mailed a summons to Harris advising him of his November 2, 2007 sentencing date. His case, as noted by the Superior Court, simply "fell through the cracks." Superior Court Criminal Rule 32 contemplates the imposition of a sentence "without unnecessary delay." The Rule also gives the court discretion to "postpone the imposition of sentence for a reasonable time" when necessary to resolve "a factor

---

15. Harris's original sentencing date, scheduled for March 16, 2001, was delayed at Harris's request. Although Harris was not sentenced until February 8, 2008, we attribute the additional delay of three months from November of 2007 to Harris's request for a continuance. A portion of the delay from Harris's first continuance request in 2001 is also attributable to Harris. Allowing three months from his original guilty plea as a reasonable period of delay attributable to Harris's initial continuance request leaves almost six and one-half years of delay not attributable to Harris for the reasons we explain in our analysis of the second factor, *infra*.

16. *Key*, 463 A.2d at 636.

17. *Middlebrook v. State*, 802 A.2d 268, 274 (Del.2002).

18. *Page v. State*, 934 A.2d 891, 896 (Del.2007).

19. *Boyer v. State*, 2003 WL 21810824, at *4 (Del.Supr.). In *Boyer*, for example, the State offered "a valid reason for the nine-year delay between Boyer's arrest and sentence": "Boyer was incarcerated in Pennsylvania for a substantial time during this delay." *Id.* at *3. The Court did note that "but for the capias issued by the Superior Court in 1987, the State made little effort, if any, to have Boyer sentenced on the burglary charge until the issuance of the detainer in 1995; and, in fact, voluntarily released Boyer to Pennsylvania before sentencing him." *Id.* In balancing the factors in *Boyer* and weighing this factor against him, the Court noted that Boyer's Pennsylvania incarceration "constituted a valid reason for the nine-year delay between Boyer's Delaware guilty plea and Delaware sentencing" and that "Boyer, not the State, violated his Pennsylvania parole which caused the delay in sentencing." *Id.* at *4.

20. *See Page*, 934 A.2d at 897 (quoting *Barker*, 407 U.S. 514, 521, 92 S.Ct. 2182).

important to the sentencing determination that is not then capable of being resolved" at the time of sentencing.[21] Although Harris's request for a continuance permitted some reasonable postponement in his sentencing date,[22] the remaining delay here was unreasonable. Nothing in the record indicates that the six and one-half year delay, extraordinary as it was, resulted from a deliberate attempt by the Superior Court or the State to delay Harris's sentencing date. A deliberate attempt to do so would weigh even more heavily in Harris's favor. Responsibility for this delay in scheduling rests with the court because sentencing calendars are established by the court, not the defendant.[23] In weighing this factor against Harris, the Superior Court erred.[24]

■ The third factor, the defendant's assertion of his right to a speedy sentencing, weighs against Harris. "This factor is 'of considerable significance in determining whether there has been a speedy [sentenc-

ing] violation.' "[25] The defendant also has some responsibility "to call attention to what he views as an unfair postponement."[26] Further, "a defendant who prolongs a matter cannot then blame the result solely on the acts or omissions of the prosecution."[27] Although a failure to demand a speedy sentencing does not bar the defendant from raising the issue or operate as a waiver,[28] his acquiescence in the delay and his silence until his 2007 motion are significant.[29] Lack of protest will make it difficult for a defendant to prove he was denied a speedy sentencing.[30] Harris admitted that he did not demand a speedy sentencing and this factor should weigh against him.[31] The Superior Court noted that Harris prompted the initial delay and did not call attention to it until after he received the notice of his new sentencing date. We agree with the Superior Court that his lack of demand and silence on the delay weigh against him.

The fourth factor, prejudice to the defendant, is neutral on the facts of this case.

21. Super. Ct.Crim. R. 32(a).

22. For purposes of our analysis, we will assume three months, the same given to Harris by the Superior Court on November 2, 2007.

23. Super. Ct.Crim. R. 50(a) ("The court may provide for placing criminal proceedings upon appropriate calendars. Preference shall be given to criminal proceedings as far as practicable.").

24. Although the Superior Court weighed this factor against Harris, its analysis was more closely aligned with the third, and not the second, factor.

25. Id. at 898 (quoting Middlebrook, 802 A.2d at 275).

26. Key, 463 A.2d at 637.

27. Id.

28. Page, 934 A.2d at 898; Key, 463 A.2d at 637; Barker, 407 U.S. at 528, 92 S.Ct. 2182.

29. See Page, 934 A.2d at 898 ("Page's apparent acquiescence to the delays and his silence until this appeal are significant."); see also Boyer, 2003 WL 21810824, at *3 ("When and if the defendant asserts his constitutional right to a speedy trial [or] sentencing hearing is important to determine whether the defendant was denied this constitutional right.").

30. See Key, 463 A.2d at 637 ("Lack of protest 'will make it difficult for a defendant to prove that he was denied a speedy trial.' ") (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182).

31. Harris also argues that he was effectively without counsel during the period of the prolonged delay. "[P]ortions of the delay which are attributable to the defendant or his counsel will not be considered for purposes of determining whether the defendant's right to a speedy trial has been infringed." Gattis v. Snyder, 278 F.3d 222, 231 (3d Cir.2002) (internal quotation marks and citations omitted). Nor will they be considered for purposes of determining whether a defendant's speedy sentencing rights are infringed.

In the speedy trial analysis, we analyze this factor "with consideration of the interests of a defendant 'that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.' "[32] Although we apply the same analysis in light of the interest of the defendant in a speedy sentencing,[33] in speedy sentencing cases the consideration of these particular interests is diminished.

Here, Harris was not incarcerated during any period of the delay. Harris argued that he suffered prejudice because he "has remained under the supervision of pre-trial services over the past 6 1/2 years being required to check in with his officer once a month and has done so" and "has been hampered in his employment and his family life has suffered given the uncertainty surrounding his situation." The Superior Court rejected his argument, finding the "inconvenience" to be insubstantial considering the potential of a prison term for the offense.[34] The Superior Court did recognize "that the uncertainty of a conviction without a sentence may have burdened his employment opportunities and personal life, [but] Harris himself fomented that uncertainty by deliberately avoiding mention of the delay either to his attorney or to the Court."[35]

Prejudice from a delay in sentencing involves considerations different from those related to pre-trial delay.[36] As the time between conviction and sentence increases, the defendant's ability to present evidence in support of mitigation may decrease. Harris effectively served a probationary sentence of six and one-half years before being sentenced. But by doing so, Harris gained mitigating evidence because he was able to demonstrate that he could be a law-abiding citizen while being supervised in the community. He reported monthly to an officer in pre-trial services over the course of years without reoffending.[37] On balance, we find that this factor is neutral.

Thus, two *Barker* factors weigh in favor of Harris, one weighs against him, and one is neutral. The outcome of the sensitive balancing of these factors is determined by the weight to be assigned to each factor. Given the totality of these circumstances, we find that the extraordinary length of the delay in this case and the absence of any justifiable reason or satisfactory explanation for six and one-half years of it outweigh the third and fourth factors, relating to the assertion of the right and prejudice. Even though the prejudice factor is neutral in this case, an affirmative demonstration of prejudice is not required to find a deprivation of the right to speedy sentencing.[38] Other states have found vio-

---

**32.** *Page*, 934 A.2d at 898 (quoting *Middlebrook*, 802 A.2d at 276); *accord Dabney*, 953 A.2d 159, 2008 WL 2169017, at *9; *Boyer*, 2003 WL 21810824, at *4.

**33.** *Boyer*, 2003 WL 21810824, at *4.

**34.** *Harris*, 2008 WL 43700, at *2.

**35.** *Id.*

**36.** *Perez*, 793 F.2d at 254.

**37.** *Cf. Boyer v. State*, 2003 WL 21810824, at *4 (Del.Supr.) (noting that "the circumstances

of [defendant's] life at the time of the Delaware sentencing arguably improved his ability to assert mitigating circumstances").

**38.** *See Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (noting that *Barker* "expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial"). *See also id.* (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. 2182):

We regard none of the four factors identified above (length of delay, reason for de-

lations of a defendant's right to a speedy sentencing for delays comparable to this one.[39] After balancing the *Barker* factors, we conclude that Harris's right to a speedy sentencing under the Sixth Amendment was infringed.[40] The Superior Court erred by denying Harris's motion to dismiss. Accordingly, we reverse.[41]

## Conclusion

The judgment of the Superior Court is **REVERSED** and this matter is **RE-** MANDED for further proceedings consistent with this Opinion.

---

lay, defendant's assertion of his right, and prejudice to the defendant) as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

**39.** *See Jolly v. Arkansas*, 358 Ark. 180, 189 S.W.3d 40, 48–49 (2004) (applying *Barker* and holding that a five-year delay in sentencing after a guilty plea violated his Sixth Amendment right to a speedy sentencing); *Trotter v. Mississippi*, 554 So.2d 313, 318 (Miss.1989) (applying *Barker* and holding that a four-year delay between the imposition of "probation-like" conditions and his sentencing violated his Sixth Amendment right to a speedy sentencing); *see also Massachusetts v. Ly*, 450 Mass. 16, 875 N.E.2d 840, 845–46 (2007) (holding that requiring a defendant to serve his sentence after an unexplained delay of sixteen years "would violate the concept of fundamental fairness that is at the core of due process"); *New York v. Drake*, 61 N.Y.2d 359, 474 N.Y.S.2d 276, 462 N.E.2d 376, 380 (1984) (holding that the State failed to meet its burden of proving that a thirty-nine month delay between a defendant's jury trial and sentencing was "long and unexplained" and therefore unreasonable, resulting in a loss of

jurisdiction that required dismissal of the indictment); *see generally Washington v. Ellis*, 76 Wash.App. 391, 884 P.2d 1360, 1362 (1994) (finding that twenty-three month delay between conviction and sentencing was unreasonable and violated its court rules for sentencing within forty days following conviction).

**40.** By finding a violation of Harris's Sixth Amendment rights, we need not reach his due process argument. Also, the second issue raised by Harris on appeal becomes moot.

**41.** In doing so, we do not rely upon *State v. Cunningham*, 405 A.2d 706 (Del.Super.1979), which is cited in Harris's reply brief. *Cunningham* was "reversed" in a one word order by this Court, and is reported at 414 A.2d 822 (Del.1980) (Table); 1980 Del. Lexis 512 (Del. Mar. 13, 1980). The case was actually remanded with jurisdiction "reserved." After remand, a three-word order, reported in 424 A.2d 26 (Del.1980) (Table) and dated August 21, 1980, shows that this Court "reversed and remanded." Our unreported decision explains that, following a hearing, the Superior Court determined that "the stipulation of facts which formed the basis of its August 2, 1979 opinion was inaccurate and incomplete and that defendant had committed a fraud upon the Court." Because that finding removed the factual foundation on which the Superior Court based its ruling (reported at 405 A.2d 706), this Court reversed that judgment dismissing the prosecution and remanded to the Superior Court for further proceedings.