# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. A. No. 1811005093 |
| | ) | |
| JUAN RODRIGUEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Date Submitted: December 8, 2020
Date Decided: March 30, 2021

*Upon Defendant Juan Rodriguez's Motion to Dismiss for Lack of Speedy Trial*
**DENIED.**

*Upon Defendant Juan Rodriguez's Motion to Reduce Bail*
**DENIED.**

## ORDER

Renee Hrivnak, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Monika G. Germono, Esquire, Tiffany A. Anders, Esquire, and Tristan J. Karsnitz, Esquire, Office of Defense Services, Wilmington, Delaware, Attorneys for Defendant Juan Rodriguez.

**SCOTT, J.**

## INTRODUCTION

Before the Court is Defendant Juan Rodriguez's ("Mr. Rodriguez"), Motion to Dismiss for Lack of Speedy Trial (the "Motion) and Motion to Reduce Bail (collectively, the "Motions"). After reviewing the Motions, the State of Delaware's (the "State") Response, and the law, both Motions are **DENIED**.

## BACKGROUND

On November 20, 2018, Mr. Rodriguez was arrested and charged with one count each of Assault First Degree, Possession of a Deadly Weapon During the Commission of a Felony, Criminal Mischief, and Criminal Trespass Second Degree. Mr. Rodriguez was incarcerated in default of bail.

On January 31, 2019, Mr. Rodriguez filed a motion to dismiss for lack of indictment. On February 18, 2019, Mr. Rodriguez was indicted on the charges listed above and one count of Harassment and one count of Possession of a Deadly Weapon by a Person Prohibited (the "First Set of Charges").

On July 15, 2019, at the final case review, this matter was scheduled for trial on July 23, 2019. On July 16, 2019, Mr. Rodriguez filed a request to continue the trial for one month so that his in-house expert could review medical records.

On September 16, 2019, Mr. Rodriguez was re-indicted and charged with the above-mentioned charges; sixteen additional counts of Breach of Conditions of Bond During Commitment, eighteen counts of Attempted Breach of Conditions of

1

Bond During Commitment; one count of Act of Intimidation; and one count of Bribing a Witness (the "Second Set of Charges").

On September 23, 2019, at the second final case review, this matter was once again set for trial for October 8, 2019. On October 1, 2019, Mr. Rodriguez moved to continue the trial to review discovery relating to the Second Set of Charges that the State provided.

On October 8, 2019, at an office conference with counsel, this matter was continued again and set for trial on June 22, 2020.

By mid-March of 2020, the Coronavirus had hit our shores and caused a great strain on the economy, medical infrastructure, and society. The President of the United States declared a national emergency under Section 501(b) of the Stafford Act , the Governor for the State of Delaware closed all public schools, and on March 13, 2020, the Chief Justice of the Delaware Supreme Court declared a judicial emergency which closed the courthouse to all but essential personnel and foreclosed the availability of jury trials. Notably, the Chief Justice specifically ordered that "all time requirements under the Speedy Trial Guidelines are hereby tolled."[1]

The Chief Justice has extended the declaration of emergency numerous times in light of the valid concerns of public health and safety due to the Coronavirus. On

---

[1] Order Declaring A Judicial Emergency, Seitz, C.J. (Del. Mar. 13, 2020).

June 8, 2020, the Chief Justice again extended the declaration of emergency for an additional 30 days, thus requiring Mr. Rodriguez's June 22, 2020 trial to be continued. Additionally, as with the previous Administrative Orders, the Chief Justice again stated that the time requirements under the Speedy Trial Guidelines are tolled.[2]

During this time, the Superior Court remained closed except for essential personnel. Limited Court proceedings were being conducted using remote access, which did not include trials.

## STANDARD OF REVIEW

The right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Delaware Constitution protects not only the defendant's interests, but those of the public, which "is entitled to no less than such steady efforts to see that criminal justice should be swift and certain as may be consistent with the demands of fair and orderly procedure."[3] Egregious delay and the circumstances surrounding it can establish a violation of the right to a speedy

---

[2] Administrative Order No. 7, In re: COVID-19 Precautionary Measures (Del. June 5, 2020).

[3] *United States v. Mann,* 291 F.Supp. 268, 271 (S.D.N.Y.1968) (cited with approval in *Barker v. Wingo,* 407 U.S. 514, 533 n. 36, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972)) ("For an example of how the speedy trial issue should be approached, see Judge Frankel's excellent opinion in *United States v. Mann, ....*").

trial under both the United States Constitution and the Delaware Constitution.[4] It is well established that the only remedy for violation of the right to a speedy trial is dismissal of the indictment.[5]

## PARTIES' ASSERTIONS

### A. Mr. Rodriguez

First, Mr. Rodriguez argues that the Delaware Supreme Court Chief Justice Seitz ("Chief Justice") lacks the authority to toll or suspend Mr. Rodriguez's constitutional rights to a speedy trial under the Chief Justice's Administrative Orders, In: COVID-19 Precautionary Measures.

Second, Mr. Rodriguez contends that the application of the *Barker* test requires this Court to dismiss Mr. Rodriguez's case due to a violation of his right to a speedy trial under Article I, Section 7 of the Delaware Constitution and the Sixth Amendment of the United States Constitution.

---

[4] *Middlebrook v. State*, 802 A.2d 268, 270 (Del. 2002) (citing *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S. Ct. 3469, 77 L.Ed.2d 1201 (1983) (recognizing that state law, if separate and independent from federal law, may provide an adequate and independent ground for a state court's decision and that "[i]f the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent [state law] grounds, we, of course, will not undertake to review the decision").

[5] *Id.* (referencing *Barker,* 407 U.S. at 522, 92 S. Ct. 2182).

## B. The State

First, the State disagrees with Mr. Rodriguez's first argument and claims that, under the Judicial Emergency Act, the Chief Justice has authority to declare a judicial emergency. The State claims that this includes the authority to toll deadlines and guidelines during a judicial emergency as well as to take actions he believes are reasonably necessary to provide for continued operation of the courts.

Second, the State argues that Mr. Rodriguez's right to a speedy trial has not been violated under *Barker v. Wingo*.[6]

## DISCUSSION

## I.   Supreme Court Chief Justice Authority

Under Section 2004 of the Judicial Emergency Act, the Chief Justice has the authority to declare a judicial emergency when the Chief Justice determines that emergency circumstances affect court facilities and the ability to staff court facilities.[7] 10 *Del. C.* Section 2004 states in full:

§ 2004. Authority of Chief Justice to declare a judicial emergency; contents of order; duration of order.

(a) The Chief Justice shall, in consultation with those other members of the Supreme Court who are available, have the authority, by order, to declare a judicial emergency when the Chief Justice determines that there are emergency circumstances affecting 1 or more court facilities or the ability to staff 1 or more court facilities. This determination shall be based upon emergency circumstances, including but not limited to, terrorist events, enemy attack, sabotage, or other hostile action or from disease, fire, flood, earthquake, accident, or other natural or manmade causes resulting in the destruction of or severe damage to courthouses, the ability to access courthouses, or the ability to staff courts.

---

[6] *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972).
[7] 10 *Del. C.* §2004(a).

(b) The order declaring a judicial emergency shall specify:

1. The court or courts and facilities affected by the order;
2. The nature of the emergency necessitating the order;
3. The time period or duration of the judicial emergency; and
4. Any other information relevant to the suspension or restoration of court operations, such as relocation of the court to another county or extensions of deadlines.

(c) An order declaring the existence of a judicial emergency shall be limited to an initial duration of not more than 30 days; provided, however, that the order may be modified or extended for additional periods of 30 days each. Any modification or extension of the initial order shall require information regarding the same matters set forth in subsection (b) of this section for the issuance of the initial order.

In declaring a judicial emergency, the Chief Justice has broad authority "to take such actions the Chief Justice reasonably believes are necessary to provide for the continued operation of the courts during a judicial emergency."[8] This authority may be used "based upon emergency circumstances, including but not limited to, terrorist events, enemy attack, sabotage, or other hostile action or from disease, fire, flood, earthquake, accident, or other natural or manmade causes resulting in the destruction of or severe damage to courthouses, the ability to access courthouses, or the ability to staff courts."[9]

At this time, the Coronavirus satisfies the "from disease", "the ability to access courthouses" and "the ability to staff courts" categories. Under the language of these statutes, it appears that the Chief Justice is authorized to toll the Speedy Trial

---

[8] 10 *Del. C.* §2009.
[9] 10 *Del. C.* Section 2009

guidelines during the duration of a judicial emergency. Thus, the Court turns to the Mr. Rodriguez's Speedy Trial claim.

## II.    The Constitutional Right to a Speedy Trial

The Sixth Amendment to the United States Constitution guarantees to every criminal defendant the right to a speedy trial. The Sixth Amendment states, in pertinent part, that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. The speedy trial clause of the Sixth Amendment is made applicable to the States through the Due Process Clause of the Fourteenth Amendment. Article I, Section 7 of the Delaware Constitution mirrors the Sixth Amendment to the United States Constitution and likewise guarantees the constitutional right to a speedy trial.

In *Barker v. Wingo*, the United States Supreme Court adopted a balancing test to determine whether a defendant's right to a speedy trial has been violated. The *Barker* test weighs both the conduct of the prosecution and the defendant and "compels courts to approach speedy trial cases on an ad hoc basis."[10] The *Barker* test requires the Court to assess four factors in determining whether a particular

---

[10] *Barker,* 407 U.S. at 530; *see also Bailey v. State,* 521 A.2d 1069, 1079 (Del. 1987) ("What constitutes a speedy trial varies depending upon the facts of the individual case. To determine whether a speedy trial violation has occurred, a court must use a balancing test in which the conduct of both the prosecution and defendant are weighed.").

defendant has been deprived of the right to a speedy trial: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice resulting to the defendant from the delay."[11] "None of the four factors is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."[12] Instead, they "are related factors and must be considered together with such other circumstances as may be relevant."[13] Thus, courts must engage in a difficult and sensitive balancing process.[14]

## 1. Length of the Delay

The threshold question is the length of the delay.[15] Unless there is some delay which is presumptively prejudicial, there is no reason to review the other factors.[16] The length of delay that "will provoke such an inquiry is necessarily dependent on the particular circumstances.[17] Generally, a delay in excess of one year between the time the right to a speedy trial attaches and the defendant's trial is presumptively

---

[11] *Middlebrook v. State*, 802 A.2d 268, 273 (Del. 2002).
[12] *Middlebrook*, 802 A.2d at 273.
[13] *Id.; see also Barker*, 407 U.S. at 533, 92 S.Ct. 2182.
[14] *Middlebrook*, 802 A.2d at 273; *Barker,* 407 U.S. at 533, 92 S.Ct. 2182.
[15] *Middlebrook*, 802 A.2d at 273-274.
[16] *Skinner v. State,* 575 A.2d 1108, 1115 (Del. 1990); *see also Barker,* 407 U.S. at 530, 92 S.Ct. 2182).
[17] *Middlebrook*, 802 A.2d at 274.

prejudicial.[18] The right to a speedy trial attaches at the time a defendant is accused of a crime through arrest or indictment, whichever occurs first.[19]

Here, the length of the delay in this case is presently over one year. As of March 30, 2021, roughly 861 days, or a little over two years and four months, have elapsed. Since the delay in this case is presently over one year, this delay is presumptively prejudicial and necessitates consideration of the remaining *Barker* factors.[20]

## 2. Reason for the Delay

Different weights are assigned to different reasons for the delay.[21] A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the State, while a more neutral reason such as negligence or overcrowded courts should be weighted less heavily against the State.[22] Valid reasons, such as a missing witness, may justify appropriate delay and will not weigh against the State.[23]

---

[18] *Dabney v. State of Delaware*, 953 A.2d 159, 164 (Del. 2008).
[19] *Middlebrook*, 802 A.2d at 273 (citing *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ("[I]t is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.")).
[20] *Dabney v. State of Delaware*, 953 A.2d 159, 164 (Del. 2008); *see also Middlebrook*, 802 A.2d at 273 (Del. 2002) (citing *Barker*, 407 U.S. at 530).
[21] *Middlebrook*, 802 A.2d at 274; *Barker,* 407 U.S. at 531.
[22] *Id.*
[23] *Id.*

The responsibility for delays resulting from negligence, overcrowded courts, or excessive caseloads on prosecutors properly lies with the State if only because the defendant has no influence over the decisions necessary to reduce a backlog in the courts or the caseloads of individual prosecutors.[24] "Although negligence resulting from overcrowded courts 'is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.'"[25] Society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.[26]

Mr. Rodriguez has suffered three primary delays that postponed his trial date. While the most relevant delay is the one caused by COVID-19, the Court will examine each delay.

On November 20, 2018, Mr. Rodriguez was arrested and his trial was set for July 23, 2019. However, on July 15, 2019, Mr. Rodriguez requested and was later granted a one month continuance to review discovery related to his First Set of Charges. Since Mr. Rodriguez requested this continuance, this first delay weighs against Mr. Rodriguez and in favor of the State.

---

[24] *Id.*

[25] *Id.* (citing *Doggett,* 505 U.S. at 657, 112 S.Ct. 2686).

[26] *Id.* at 275 (citing *Barker,* 407 U.S. at 527, 92 S.Ct. 2182).

The Court then set Mr. Rodriguez's second final case review for September 23, 2019. On September 23, 2019, at Mr. Rodriguez's second final case review, his trial was set for October 8, 2019. However, on October 1, 2019, Mr. Rodriguez requested another continuance, but this time for four months, to review discovery related to the Second Set of Charges in the September 16, 2019 re-indictment. On October 8, 2019, at the office conference prior to trial, this Court granted Mr. Rodriguez's second continuance request and set Mr. Rodriguez's trial for June 22, 2020. Since Mr. Rodriguez requested this continuance, this delay weighs against Mr. Rodriguez, partly against the Court for scheduling issues, and in favor of the State.

However, prior to Mr. Rodriguez's June 22, 2020 trial, the Chief Justice tolled the Speedy Trial Guidelines through his Administrative Order, effective on March 16, 2020, and has since provided monthly extensions of his Administrative Order. The tolling of the Speedy Trial Guidelines continued to be renewed month after month. Relevant here, the June renewal caused Mr. Rodriguez's June 22, 2020 trial to be continued. At this moment in time, Mr. Rodriguez has not been given a new trial date because, until such time that criminal trials may be held safely by this Court, the Court cannot conduct criminal trials.

Mr. Rodriguez argues that, in consideration of the unscheduled nature of his trial, the continuing length of delay and the uncertainty as to when he may have his

11

trial requires the Court to find that this factor supports a finding of a speedy trial violation.[27] He claims that "the uncertainties inherent in pretrial detention are multiplied as the Court has failed to provide defendant with a new court date."[28]

"The Court's current and continued inability to hold trials in a way that does not put the public, the parties, court staff, and counsel at serious risk" is a good-faith and reasonable justification for the delay in this matter.[29] The Court's decision to take emergency health measures to limit the spread of the COVID-19 does not weigh against the State.[30] COVID-19 related public safety considerations in this case and all other criminal cases in this Court that have been likewise affected by COVID-19, such as the Court's inability to safely conduct a jury trial, is a good-faith and reasonable justification that justifies the delay.[31] There is no attempt here to delay Mr. Rodriguez's trial insofar as to hamper his defense, gain some tactical advantage, or harass Mr. Rodriguez.[32]

In sum, the first two delays are attributable to Mr. Rodriguez and the last delay is neutral and attributable to neither Mr. Rodriguez, the State, nor the Court. Without

---

[27] Def.'s Mot. at p. 11.
[28] *Id.*
[29] *United States v. Smith*, 2020 WL 6063292, at *5 (E.D. Cal. 2020).
[30] *Harris v. State*, 956 A.2d 1273, 1276 (Del. 2008) ("[A] valid reason may justify appropriate delay and will not weigh against the state at all.").
[31] *Id.*
[32] *See Barker*, 407 U.S. at 531 n. 32, 92 S. Ct. 2182.

some delay attributable to the State or the Court, this factor weighs against Mr. Rodriguez and in favor of the State.

### 3. Defendant's Assertion of his Right to a Speedy Trial

"If and when a defendant asserts his rights are factors of considerable significance in determining whether there has been a speedy trial violation."[33] The "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."[34] This factor has been satisfied because Mr. Rodriguez, through his Motion, has asserted his right to a speedy trial.[35]

### 4. Prejudice to the Defendant

Last, "the prejudice prong should be considered in light of three of defendants' interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired."[36] Mr. Rodriguez makes arguments as to "preventing oppressive pretrial incarceration" and "minimizing the anxiety and concern of the accused," but does not assert a claim that there exists a "possibility that his defense will be impaired."

---

[33] *Middlebrook*, 802 A.2d at 275 (citing *Bailey,* 521 A.2d at 1082).
[34] *Middlebrook*, 802 A.2d at 275 (citing *Barker,* 407 U.S. at 532, 92 S. Ct. 2182).
[35] Def.'s Mot. at p. 11.
[36] *Middlebrook*, 802 A.2d at 276 (referencing *Barker,* 407 U.S. at 532, 92 S.Ct. 2182.).

13

As to the first and second interest, "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial."[37] Surely *Middlebrook* does not stand for the premise that this subprong is satisfied in every circumstance. If so, the very purpose of having this requirement would have no weight attached to it. Therefore, this factor should be weighed in defendant's favor only where the pretrial incarceration or the anxiety suffered is undue or otherwise disproportionate.[38] Moreover, it should be a defendant's burden to demonstrate and substantiate any undue or otherwise disproportionate oppressive pretrial incarceration and anxiety.[39]

Mr. Rodriguez argues his pretrial detention is oppressive because of the magnified health and safety issues present in detention facilities during the current COVID-19 pandemic. Mr. Rodriguez also argues that the uncertainty of when jury trials will resume and that these charges have "hung over his head for approximately 2 years" have created unique levels of anxiety for him. Mr. Rodriguez's rationale here does not rise to the level of undue oppression and anxiety.

COVID-19 has jarred and continues to jar the world. However, Delaware government officials have designed COVID-19 protocols to protect incarcerated

---

[37] *See State v. Garza*, 146 N.M. 499, 510, 212 P.3d 387, 398 (¶ 35).
[38] *Id.*
[39] *Id.* at ¶¶ 35, 39-40.

14

inmates within the State's correctional institutions. The Delaware Department of Corrections ("DOC"), for instance, has taken aggressive steps to prevent or minimize the spread of COVID-19 within the prison system since the beginning of the pandemic. The Department of Corrections "continues to employ a variety of prevention, screening, cleaning and containment measures to guard against the introduction and spread of COVID-19, including:

> • All persons, including Officers, administrative staff and probationers who enter any Level V prison, Level IV violation of probation or work release center, or Probation and Parole Office are screened for COVID-19, including a series of questions and a forehead temperature check with a thermometer.
> • Staff who present with symptoms are sent home to self-quarantine and directed to contact their health care provider.
> • Newly arriving inmates are held in isolation for the first 14 days, during which time they are carefully monitored, including daily temperature checks with a thermometer.
> • DOC has implemented extra daily cleanings of DOC facilities and is using specialized fogging machines to disinfect entire rooms of common areas, housing units and workspaces.
> • Face masks are being worn by Correctional Officers and contract healthcare workers as a protection for inmates, Officers and other employees.
> • Face masks have been provided to every inmate at all Level V prisons and Level IV work release and violation of probation facilities statewide.
> • Voluntary COVID-19 testing is being offered to all correctional staff and medical personnel at every DOC facility."[40]

---

[40] News Release, Delaware Department of Correction, Commissioner Claire DeMatteis (Nov. 20, 2020).

Moreover, the Court is not convinced that Mr. Rodriguez's pretrial detention is unduly oppressive or that his anxiety is disproportionate because of COVID-19. Mr. Rodriguez has not raised any underlying health issues that make him disproportionately at risk under these circumstances. Additionally, most, if not all, incarcerated defendants in default of bail are incurring anxiety due to the ongoing pandemic. Mr. Rodriguez is not alone in incurring anxiety related to COVID-19 and the effect it has had on trial dates. The COVID-19 pandemic has instilled fear and anxiety for the vast majority of the American population. In short, Mr. Rodriguez's anxiety and pretrial incarceration, due to the delays in conducting a jury trial due to the COVID-19 pandemic, does not appear to rise to the level of undue or disproportionate.

The last interest aims at "limiting the possibility that the defense will be impaired" due to the delays in any particular case. This form of prejudice, while not the only type recognized by the Sixth Amendment, is the most serious ... because the inability of a defendant to adequately prepare his case skews the fairness of the entire system.[41] The Court's determination as to "whether the delay has hurt the defense … is not a point to be resolved with mathematical certainty."[42] Insubstantial,

---

[41] *Middlebrook*, 802 A.2d at 277 (citing Barker, 407 U.S. at 532, 92 S.Ct. 2182).
[42] *Middlebrook*, 802 A.2d at 277; *see also U.S. v. Mann,* 291 F.Supp. 268, 273.

speculative, or premature claims of possible prejudice will not suffice.[43] Certain factors, such as specific evidence or witnesses having disappeared or lost,[44] are relevant in the Court's determination as to the possibility of whether the defense will be impaired due to the delays in any particular case.[45]

Mr. Rodriguez makes no arguments as to whether his defense will be in any way impaired by the delay attributable to the onslaught of the COVID-19 pandemic. Thus, this subfactor weighs against Mr. Rodriguez. There is no evidence that Mr. Rodriguez's defense is in any way impaired.

After careful consideration of the *Middlebrook* factors pertaining to prejudice, Mr. Rodriguez's delay in having a trial due to the onslaught of COVID-19 does not constitute "prejudice" within the meaning of the term under *Barker* or *Middlebrook*.[46]Moreover, in balancing the remaining *Barker* factors with the facts of this case, the Court will not dismiss this case because Mr. Rodriguez's right to a speedy trial has not been violated. The only factor that favors Mr. Rodriguez is the length of the delay. The remaining factors are primarily neutral or otherwise favor

---

[43] *U.S. v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777 (1966) ("the appellees' claim of possible prejudice in defending themselves is insubstantial, speculative and premature. They mention no specific evidence which has actually disappeared or has been lost, no witnesses who are known to have disappeared.").
[44] *Id.*
[45] *Middlebrook*, 802 A.2d at 277 (citing Barker, 407 U.S. at 532).
[46] *See State v. Duonnolo*, 2020 WL 2467077, at *7.

the State. As such, dismissal of Mr. Rodriguez's case, a drastic measure under these circumstances, is not warranted.

**III.    Mr. Rodriguez's Request to Modify Bail**

In his Motion, in the event that this Court denies his Motion to Dismiss for a Lack of Speedy Trial, Mr. Rodriguez alternatively requests that the Court modify the conditions of his bail and release him while awaiting his trial date. This is not Mr. Rodriguez's first request to modify the conditions of his bail. In March 2019, this Court previously denied his request to reduce bail.

Mr. Rodriguez cites an article from March 2020 that suggests low-level and non-violent offenders should be released because the federal prison system is unprepared due to a lack of staffing and proper protective equipment. Mr. Rodriguez is most certainly not dealing with charges associated with a low-level and non-violent offender. The charges Mr. Rodriguez faces are: Assault First Degree, Possession of a Deadly Weapon During the Commission of a Felony, Criminal Mischief, and Criminal Trespass Second Degree, sixteen additional counts of Breach of Conditions of Bond During Commitment, eighteen counts of Attempted Breach of Conditions of Bond During Commitment; one count of Act of Intimidation; and one count of Bribing a Witness. Mr. Rodriguez's argument here fails.

Moreover, Mr. Rodriguez is facing a significant amount of minimum mandatory Level 5 incarceration time if he is convicted of the crimes he is charged

with and declared a habitual offender. If convicted of all pending charges and sentenced as a habitual offender, Mr. Rodriguez faces a mandatory minimum of 50 years and up to forty life sentences, plus one year and sixty days.

Last, Mr. Rodriguez has shown continuous disregard of this Court's prior Orders. Mr. Rodriguez was ordered to have no contact with the victims, and yet he is now accused of breaching these conditions and accused of attempting to intimidate and bribe the victims in this case. Mr. Rodriguez has failed to appear when required to do so and this Court has had to issue no fewer than eighteen capiases in the past. With the severity of the nature of the crimes Mr. Rodriguez is accused of, the length of minimum mandatory Level 5 incarceration time Mr. Rodriguez may incur if convicted on all charges, and the history of Mr. Rodriguez's non-compliance with this Court's Orders, the bail set is appropriate.

## CONCLUSION

For the forgoing reasons, Mr. Rodriguez's Motion to Dismiss for Lack of Speedy Trial is **DENIED** and Mr. Rodriguez's Motion to Reduce Bail is **DENIED.**


**IT IS SO ORDERED.**

**/s/ Calvin L. Scott**
**The Honorable Calvin L. Scott, Jr.**

19