IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KALVIN BENJAMIN, | § | |
| | § | No. 72, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2110002285 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: September 19, 2024
Decided: November 7, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1)    A Superior Court jury found the appellant, Kalvin Benjamin, guilty of stalking, strangulation, and offensive touching. The Superior Court sentenced Benjamin to five years and thirty days of Level V incarceration, followed by eighteen months of Level III GPS supervision. This is Benjamin's direct appeal.

(2)    The evidence presented at trial established that Benjamin and his ex-wife Tracy Simmons reconnected as friends in the spring of 2021. Benjamin would come to Simmons' apartment and they would cook or go out together. Benjamin

would also spend time with Simmons when she was on a break from her job as a toll collector.

(3) During the summer of 2021, Simmons loaned Benjamin one of her cars on the condition that he pay for the lease. After Benjamin fell behind on the lease payments and had accidents with the car, Simmons decided to end the arrangement. She also discouraged Benjamin from appearing unannounced at her apartment where she lived by herself, but he continued to do so anyway.

(4) At the end of August, Benjamin sent Simmons multiple texts complaining that she was ignoring him. Simmons told Benjamin not to call her or come to her home until he returned the car to her. Benjamin responded angrily to Simmons' request for the return of her car and the parties exchanged accusatory texts. Benjamin threatened to come to Simmons' place and repeatedly called her names. Simmons told Benjamin to leave her alone. At the end of September, Benjamin sent Simmons texts demanding to know where she was. Simmons told Benjamin to stay away from her, but Benjamin said he would come to her home and continued to send texts demanding that she respond to him.

(5) On October 5, 2021, Benjamin sent Simmons texts asking if she was at work. Simmons said yes, but did not respond to Benjamin's texts regarding when she would be on break. When Benjamin asked if Simmons had taken her last break, she said yes. Shortly after Simmons got home, Benjamin arrived without warning.

Simmons was unwilling to speak with Benjamin, but agreed to let him in so he could use the bathroom. After using the bathroom, Benjamin began screaming at Simmons and accusing of her lying about being at work. He grabbed Simmons and choked her by putting his hand around her neck and squeezing. He also punched her.

(6) During the struggle, Benjamin took Simmons' phone. Simmons, who had a gun in her purse that Benjamin knew about, put her hand in her purse so that Benjamin would give her phone back to her. Benjamin threw the phone at Simmons, who then called 911. Benjamin left before the police arrived. The police took photographs of Simmons' injuries, including bruises on her neck and face. Shortly after the police departed, Benjamin returned to the apartment and yelled at Simmons to let him in. Simmons called the police, who returned and did not find Benjamin. Benjamin subsequently sent Simmons texts accusing her of being a liar.

(7) Simmons sought medical treatment on October 11, 2021. A forensic nurse testified that the photographs and the October 11 medical records were consistent with strangulation. At the conclusion of the State's case, Benjamin moved for a judgment of acquittal on the stalking charge. The Superior Court denied the motion. Based on Simmons' testimony that Benjamin knew she had a gun in her purse and that she intentionally reached into her purse during the struggle to make Benjamin think she was getting the gun, the Superior Court granted, over the State's objection, Benjamin's request for a jury instruction on self-defense.

(8) The jury found Benjamin guilty of stalking, strangulation, and offensive touching. At sentencing on February 16, 2024, the Superior Court sentenced Benjamin as follows: (i) for stalking, effective October 6, 2021, one year of Level V incarceration; (ii) for strangulation, four years of Level V incarceration followed by eighteen months of Level III GPS probation; and (iii) for offensive touching, thirty 30 days of Level V incarceration. This appeal followed.

(9) On appeal, Benjamin's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Benjamin of the provisions of Rule 26(c) and provided Benjamin with a copy of the motion to withdraw and the accompanying brief.

(10) Counsel also informed Benjamin of his right to identify any points he wished this Court to consider on appeal. Benjamin has raised points for this Court's consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(11) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally

devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

(12)    Benjamin's arguments on appeal may be summarized as follows: (i) his right to a speedy trial was violated; (ii) his right to speedy sentencing was violated; and (iii) the testimony of the forensic nurse and the admission of Simmons' medical records violated his right to confront witnesses against him.

(13)    Benjamin did not assert his right to a speedy trial in the Superior Court so we review for plain error.[2]  Plain error "is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[3]   To determine whether Benjamin's Sixth Amendment right to a speedy trial was violated, we use the four-factor balancing test set forth in *Barker v. Wingo*.[4]   The four factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant.[5]   The factors are related and no one factor is conclusive.[6]

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).
[2] Supr. Ct. R. 8; *Page v. State*, 934 A.2d 891, 896 (Del. 2007).
[3] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[4] 407 U.S. 514 (1972).  *See also Johnson v. State*, 305 A.2d 622, 623 (Del. 1973) (adopting *Barker* test)).
[5] *Barker*, 407 U.S. at 530.
[6] *Id.* at 533.

(14) A defendant's right to a speedy trial "attaches as soon as the defendant is accused of a crime through arrest or indictment, whichever occurs first."[7] Unless the length of delay is determined to be "presumptively prejudicial," it is not necessary to consider the additional *Barker* factors.[8] If the delay between arrest or indictment (whichever occurs first) and the start of trial exceeds one year, this Court will generally consider the additional factors.[9]

(15) More than one year passed between Benjamin's arrest (October 6, 2021) and the commencement of trial (May 8, 2023) so we consider the additional *Barker* factors, starting with the reason for the delay. Some of the delay between Benjamin's arrest and trial is attributable to the COVID-19 pandemic and some is attributable to the State. When the judicial emergency in effect as a result of the COVID-19 pandemic expired on July 13, 2021, the Speedy Trial Guidelines were amended to provide that certain provisions (including that 100% of all criminal cases be adjudicated to guilt or innocence within one year of indictment) did not apply to Superior Court cases pending between March 16, 2020, and December 31, 2021.[10] Benjamin's case fell within this time period because the Superior Court accepted it on November 2, 2021. The Superior Court was directed to prioritize cases like

---

[7] *Middlebrook v. State*, 802 A.2d 268, 273 (Del. 2002).
[8] *Id.*
[9] *Cooper v. State*, 2011 WL 6039613, at *7 (Del. Dec. 5, 2011).
[10] Administrative Order No. 22 ¶ 3; Administrative Order No. 22, Ex. 1 § (a)(iv).

6

Benjamin's as it determined "to be in the best interests of justice and of allowing for the prompt and efficient management of the caseload resulting from the COVID-19 pandemic."[11]  Benjamin's trial was originally scheduled for March 6, 2023, but was postponed twice at the request of the prosecutor because she was scheduled for other trials.  Even though the Speedy Trial Guideline requirement that 100% of Superior Court cases be resolved within one year of the indictment did not apply to Benjamin's case, he was still adjudicated as to guilt within one year of his indictment.

(16)  Because Benjamin did not assert his right to a speedy trial in the Superior Court, this factor weighs in favor of the State.  The last *Barker* factor—prejudice to the defendant—also weighs in the State's favor.  Benjamin has not identified any prejudice that he suffered from the delay or shown that the delay impaired his defense.  Having weighed the *Barker* factors, we conclude that there was no violation of Benjamin's constitutional right to a speedy trial.

(17)  Benjamin did not assert his right to speedy sentencing in the Superior Court, so we also review this claim for plain error.[12]  We assume that Benjamin had a constitutional right to speedy sentencing and again apply the *Barker* factors.[13]  In the speedy sentencing context, "[t]he alteration of defendant's status from accused

---

[11] Administrative Order No. 22, Ex. 1 § (a)(iv).

[12] *See supra* n.2.

[13] *Harris v. State*, 956 A.2d 1273, 1275 (Del. 2008).

7

and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process."[14]

(18)  As the State notes, there is less than a year between Benjamin's adjudication of guilt (May 10, 2023) and his sentencing (February 16, 2024).  This period is, however, longer that the sixty days for cases where a presentence investigation is ordered as set forth in the Speedy Trial Guidelines.[15]  After the reading of the verdict in this case, the Superior Court ordered a presentence investigation.  The Superior Court initially ruled that sentencing would take place on July 14, 2023, but also directed that sentencing would occur at the same as Benjamin's violation-of-probation hearing in a different case.  The record does not indicate why sentencing did not occur on July 14, 2023.

(19)  At the end of August 2023, the State filed a motion to declare Benjamin a habitual offender.  Benjamin filed an answer to the motion on October 2, 2023.  The State filed a response and amended motion on October 24, 2023.  After an office conference on November 16, 2023, the Superior Court denied the State's motion to declare Benjamin a habitual offender on November 27, 2023.  Sentencing occurred on February 16, 2024.  Even assuming the delay in sentencing is attributable to the State, the remaining factors do not weigh in Benjamin's favor.  Benjamin did not

---

[14] *Id.* at 1275 (quoting *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir.1986)).

[15] Administrative Order No. 22 Ex. 1 § (a)(ii) ("In all cases in which a presentence report has been ordered, the sentencing shall take place within sixty (60) days of the date of the plea or verdict.").

assert his right to speedy sentencing in the Superior Court and has not identified any prejudice he suffered as a result of the delay. There was no violation of Benjamin's right to speedy sentencing.

(20) We turn to Benjamin's contention that the testimony of the forensic nurse and the admission of Simmons' medical records violated his Sixth Amendment right to confront witnesses against him. The Confrontation Clause of the Sixth Amendment "bars the prosecution from introducing the testimonial statements of witnesses absent from trial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine him."[16] Simmons argues that he had a right to confront the "forensic analyst" who prepared "the report" that the forensic nurse relied upon for her testimony.[17]

(21) When the forensic nurse began to testify about her review of Simmons' medical records and the signs of strangulation, Benjamin objected that she had not prepared her own report and could not testify as an expert based on records and interviews she had not prepared or conducted herself. The prosecutor responded that she had notified Benjamin of her intent to call a forensic nurse to testify as an expert on strangulation. After reviewing the State's Superior Court Criminal Rule 16 response, which disclosed that the State intended to call a forensic nurse to testify as

---

[16] *Chavis v. State*, 227 A.3d 1079, 1088 (Del. 2020) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)).

[17] Non-Merit Br., Ex. B at 4-5.

an expert on strangulation and whether Simmons' injuries were indicative of strangulation, the Superior Court overruled Benjamin's objection.

(22) Because Benjamin did not object to the forensic nurse's testimony based on a violation of his Sixth Amendment right to confrontation, our review is limited to plain error.[18] Benjamin relies on the United State Supreme Court's decisions in *Melendez-Diaz v. Massachusetts*[19] and *Bullcoming v. New Mexico*[20] to argue that his right to confrontation was violated. This reliance is misplaced. In *Melendez-Diaz*, the Supreme Court held that the defendant was entitled to confront at trial the laboratory analysts who prepared certificates reporting the results of testing to determine the composition and weight of a substance (cocaine) because those certificates were testimonial.[21] In *Bullcoming*, the Court held that the Confrontation Clause did not permit admission of a forensic laboratory report certifying the defendant's blood-alcohol concentration "through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification."[22]

(23) In this case, however, the forensic nurse did not rely upon the results of forensic testing performed by an absent analyst for her testimony. She relied upon

---

[18] *See supra* n.2.
[19] 557 U.S. 305 (2012).
[20] 564 U.S. 647 (2011).
[21] *Melendez-Diaz*, 557 U.S. at 311.
[22] *Bullcoming*, 564 U.S. at 652.

10

statements, in medical records, that Simmons made to obtain medical treatment. As the Supreme Court stated in *Melendez-Diaz*, "medical reports created for treatment purposes" are not testimonial statements covered by the Confrontation Clause.[23] Statements that Simmons made to medical providers about her symptoms and the cause of those symptoms did not constitute hearsay.[24] In addition, Benjamin was notified of the State's intent to submit Simmons' medical records under D.R.E. 803(6) (providing that records of a regularly conducted activity are not hearsay) and D.R.E. 902(11) (providing that certified records of a regularly conducted activity are self-authenticating) and did not object to the admission of the records. The admission of the forensic nurse's testimony and Simmons' medical records did not constitute plain error.

(24) Finally, the offensive touching sentence in the sentencing order is inconsistent with the sentence imposed by the Superior Court during sentencing. At the sentencing hearing, the Superior Court sentenced Benjamin to thirty days of Level V incarceration for offensive touching. The sentencing order, however, describes the sentence for offensive touching as thirty months of Level V incarceration. As this Court has previously recognized in the context of sentencing errors, the "Superior Court may, at any time, correct '[c]lerical mistakes in

---

[23] *Melendez-Diaz*, 557 U.S. at 312 n.2.
[24] Delaware Uniform Rule of Evidence ("D.R.E.") 803(4).

11

judgments, orders or other parts of the records and errors in the record arising from oversight of omission.'"[25] We will remand the matter to the Superior Court for the limited purpose of issuing a corrected sentencing order.

(25) This Court has reviewed the record carefully and has concluded that Benjamin's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Benjamin could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that this matter is remanded to the Superior Court for correction of the clerical error in the sentencing order. In all other respects, the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot. Jurisdiction is not retained.

BY THE COURT:

*/s/Karen L. Valihura*
Justice

---

[25] *Puller v. State*, 2023 WL 1099179, at *2 (Del. Jan. 27, 2023) (quoting Super. Ct. Crim. R. 36).