David L. KEY, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: April 4, 1983.

Decided: June 16, 1983.

David M. Lukoff, Asst. Public Defender, Wilmington, for appellant.

Eugene M. Hall, State Prosecutor, Wilmington, for appellee.

Before HERRMANN, C.J., McNEILLY and MOORE, JJ.

MOORE, Justice:

The defendant, David L. Key, faced a series of charges stemming from the armed robbery of a grocery store, including robbery in the first degree, kidnapping in the first degree, assault and related deadly weapons counts. After trial before a Superior Court judge sitting without a jury, Key was convicted of certain of these crimes. On the State's post-trial motion, Key was also declared an habitual criminal under 11 *Del.C.* § 4214 and sentenced to life imprisonment. In his appeal from the convictions and the sentence as an habitual criminal, Key first contends that the passage of five months between his conviction and the imposition of sentence violated his federal and state constitutional rights to a speedy trial. Key also argues that he had a constitutional right to a jury determination of his habitual criminal status. Finally, we address as a matter of first impression Key's claim that the trial judge erred in convicting him of first degree unlawful imprisonment (11 *Del.C.* § 782) as a lesser included offense of first degree kidnapping (11 *Del.C.* § 783A). We reject these assertions and affirm the Superior Court in all respects.

I.

On the evening of June 4, 1981, Marianne Gillen was working as the cashier at a Stop-N-Go grocery store near Wilmington, Delaware. Her sister, Susan, and another young woman came into the store to visit. Key entered a short time later. He purportedly wanted to cash rolls of pennies and buy a pack of cigarettes. Susan, who had gone behind the counter to wait on him,

accepted the rolls of pennies and put the cigarettes and change on the counter. Key then grabbed her and tried to pull her across the counter. Marianne rushed over, broke his hold, and Susan fell to the floor.

At this point Key began to come around the counter. Pulling out a knife, he said, "this is a robbery," and brandishing the weapon in front of the girls' faces, ordered them to open the cash register. In response to his demands Marianne pulled the cash drawer out of the register and threw it on the counter. Key started to scoop money from the drawer and stuff it into his pockets.

He then began to use abusive and obscene language, threatening to kill the women. He grabbed Marianne, but the two sisters resisted by holding on to each other. Key struggled with them, saying he was going to take Susan in order to prevent them from calling the police. During the fracas, Susan was slashed in the neck.

Key was indicted for first degree kidnapping (11 *Del.C.* § 783A), second degree assault (11 *Del.C.* § 612), two counts of first degree robbery (11 *Del.C.* § 832), and three counts of possession of a deadly weapon during the commission of a felony (11 *Del.C.* § 1447). In January 1982, a Superior Court judge, sitting without a jury, found Key guilty of second degree assault and one count each of first degree robbery and possession of a deadly weapon. He was acquitted of the other robbery charge. Decision was reserved, pending additional briefing by counsel, on the kidnapping charge and an associated weapons count.[1] In early April 1982, the trial judge found Key guilty of first degree unlawful imprisonment (11 *Del.C.* § 782), as a lesser included offense of first degree kidnapping, and possession of a deadly weapon during commission of the crime of unlawful imprisonment. Sentencing was scheduled for mid-May, five weeks later.

At the time of sentence the State sought and obtained a ten day postponement in order to file a motion to have Key declared an habitual criminal.[2] The motion was filed in early June, about a week after it was due, but the trial judge nonetheless accepted and considered it. Key then requested a jury trial on the issue of his status as an habitual criminal. Each side submitted briefs on the question, and in late August the trial judge denied Key's request. The habitual criminal hearing was held as scheduled in mid-October, and about two weeks later Key was ordered imprisoned for life.

## II.

### A.

Because of the habitual criminal matter and attendant procedural questions, sentence was imposed about five months after the originally scheduled sentencing date and seven months after Key's conviction. He now argues that this constitutes a delay violative of the federal and state constitutional guarantees to a speedy trial.[3] The State concedes that Delaware courts have applied a speedy trial analysis to claims such as Key's. However, it contends that Key caused part of the alleged delay, and in any event, he suffered no prejudice.

---

1. During trial, the State entered a *nolle prosequi* on the weapons charge related to one of the robbery counts.

2. Because Key had three previous convictions for robbery, the State argued that he was subject to mandatory life imprisonment without parole under 11 *Del.C.* § 4214(b). Apparently, there was some question whether all the earlier robbery convictions were of the aggravated type specified in section 4214(b). Thus, he was sentenced to life imprisonment under the discretionary provisions of section 4214(a), relating to a fourth conviction of any felony. The habitual criminal statutes, 11 *Del.C.* §§ 4214–15, are described in part III–A of this opinion.

3. The sixth amendment states in relevant part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." Article I, section 7 of the Delaware Constitution, using similar language, says, "In all criminal prosecutions, the accused hath a right ... to have ... a speedy and public trial...."

▉ When this Court considered a speedy trial challenge to an alleged sentencing delay in *Johnson v. State,* Del.Supr., 305 A.2d 622 (1973), there was no definitive decision on that subject from the Supreme Court of the United States. *See Johnson,* 305 A.2d at 623. The situation has not changed. Thus, we reaffirm the approach taken in *Johnson:* assuming that the sixth amendment requires speedy sentencing, an allegedly unconstitutional delay is examined in the same way as an asserted denial of the right to speedy trial. Therefore, we consider the conduct of both the prosecution and the defendant, looking primarily at (1) the length of the delay, (2) the cause of the delay, (3) the defendant's assertion of his rights, and (4) any prejudice to the defendant because of the delay. *Johnson,* 305 A.2d at 623. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Individually, none of these factors is conclusive; they are related "and must be considered together with such other circumstances as may be relevant". *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193. *See Johnson,* 305 A.2d at 624.

The usual case involves a postponement in the start of trial, and the attendant passage of time becomes a general indicator of the need for a full examination of that issue. *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2191–92. The extent of delay also is of importance when the prosecution attempts to justify it or show a lack of prejudice to the defendant. *Dickey v. Florida,* 398 U.S. 30, 48 n. 12, 90 S.Ct. 1564, 1574 n. 12, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring); *United States v. Macino,* 486 F.2d 750, 752 (7th Cir.1973). Although the five month interval between Key's conviction and sentencing is certainly less than the delays in other cases [*see Johnson,* 305 A.2d at 623; *State v. Drake,* Iowa Supr., 259 N.W.2d 862, 865 (1977) (citing cases)], we can not say that it is so negligible as to obviate closer examination. *See also Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. Thus, the duration complained of by the defendant is pertinent to the issues here. *But cf. Erbe v. State,*

Md.Ct.App., 276 Md. 541, 350 A.2d 640, 644–45 (1976).

▉ The State may assert a variety of reasons for delay, but a deliberate attempt to impair or harass the defense or to gain some unfair tactical advantage rarely, if at all, justifies any postponement. *Id.* However, an event over which the prosecution has no control, e.g., the disappearance or illness of an important witness, supports an appropriate rescheduling of the proceedings. Between these extreme situations lie instances of negligence, overcrowded courts, or excessive caseloads on prosecutors. These factors, while undesirable, are less peremptory in mandating appellate intervention than blatant (or subtle) attempts to distort the fact-finding process of the trial, and an individual prosecutor may have little, if any, control over the ultimate cause of a particular delay. Yet the responsibility for delays resulting from such circumstances properly lies with the State if only because the defendant has no influence over the decisions necessary to reduce a backlog in the courts or the caseloads of individual prosecutors. *See id.* Judicial tolerance is often appropriate if a delay is caused by occasional inadvertence or excessive demands placed on a part of the criminal justice system, but in any given case the delay or the reason behind it may be intolerable and thus unjustified. *See id.*

Key argues that the State was unprepared to file habitual criminal proceedings against him in May 1982, and this caused the delay in his sentencing. As he describes it, the State had almost four months (from January to May 1982) to prepare the motion and obtain the necessary supporting records. Furthermore, the State did not file the motion on the day it was due, rather, it was about a week late. Key, however, does not imply that the State was acting in bad faith. Nor does he suggest any rational claim of prejudice as a result of the State's one week delinquency.

▉ It is inferred that the prosecutor was less than diligent in handling the sentencing aspects of this case, but lack of

diligence or advance planning, as *Barker* indicates, does not always make a delay unconstitutional. Clearly, the outcome of habitual criminal proceedings would affect the punishment ultimately imposed on Key, and a deferral of sentence for such purpose was both logical and proper. *United States v. Williams,* 407 F.2d 940 (4th Cir.1969); *United States v. Pruitt,* 341 F.2d 700 (4th Cir.1965). This, however, only explains part of the delay. When we look for causes after the State filed the motion, it is obvious that the protraction rests squarely with Key and his demand for a jury trial on his habitual criminal status. Certainly, a defendant who prolongs a matter can not then blame the result solely on the acts or omissions of the prosecution. *See Luongo v. Wenzel,* 404 F.Supp. 874 (E.D.N.Y.1975); *Brown v. Slayton,* 342 F.Supp. 61 (W.D.Va. 1972); *Johnson,* 305 A.2d at 623–24.

■ An initial failure to demand a speedy trial does not forever bar a defendant from later raising the issue. *Barker,* 407 U.S. at 528, 92 S.Ct. at 2191. But a defendant does have some responsibility to call attention to what he views as an unfair postponement. *Id.* Lack of protest "will make it difficult for a defendant to prove that he was denied a speedy trial". *Id.* at 532, 92 S.Ct. at 2193. When the judge deferred Key's originally scheduled sentencing, Key promptly objected, and we have no doubt that this was an assertion of his sixth amendment rights. But in light of Key's pursuit of a procedural claim (i.e., the demand for a jury trial in the habitual criminal proceedings), his apparent acquiescence in the briefing schedule precipitated by his request, and his silence with respect to the eventual sentencing date, we do not attach much weight to what seems to be a purely pro forma objection. *Id.* at 529, 92 S.Ct. at 2191; *Johnson,* 305 A.2d at 624.

■ Key's sole claim of prejudice is that the delay enabled the State to initiate habitual criminal proceedings, thus leading to an enhanced sentence. While the ultimate result is an important factor in determining whether a defendant was prejudiced by the delay in sentencing, any such prejudice is to be assessed in light of the interests which the speedy trial guarantee was designed to protect. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Brooks v. United States,* 423 F.2d 1149, 1153 (8th Cir.1970); *Erbe,* 305 A.2d at 647–49.

Sentencing delays may result in "undue and oppressive incarceration" of the person whose conviction is reversed on appeal. *Gonzales v. State,* Alaska Supr., 582 P.2d 630, 633 (1978). Until sentence is imposed, a defendant can not appeal his conviction or seek a pardon, commutation, or reduction of his sentence. *See* Del. Const. art. IV, § 11(1)(b), art. VII, § 1; Super.Ct.Crim.R. 35. Prompt sentencing undermines any claim that a purported delay was intended to chill the legitimate exercise of first amendment rights by an unpopular defendant. *See also Klopfer v. North Carolina,* 386 U.S. 213, 217–18, 87 S.Ct. 988, 990–91, 18 L.Ed.2d 1 (1967). Also, in the event of a reversal on appeal both the State and defendant may be prejudiced because witnesses necessary for a new trial may become unavailable due to the passage of time. Finally, the public has an interest in prompt and certain punishment, not only as part of the fair and expeditious administration of justice, but also to minimize the chance of future criminal activity by a defendant free on bail pending sentence. *Gonzales,* 582 P.2d at 633. Moreover, the deterrent effect of swift and certain punishment cannot be overlooked.

On this record defendant's claim implicates only one cognizable interest—the fair and expeditious administration of justice. It might have been better if the prosecutor had acted in a more timely fashion, but that is all hindsight. Whether the subsequent delay in filing the habitual criminal motion was expeditious in the context of crowded dockets and large caseloads is an issue upon which reasonable men could differ. But we can not say, and no one has alleged, that the prosecutor postponed filing the motion to take unfair advantage of Key. That is underscored by Key's procedural maneuvers

which materially contributed to the sentencing delay, and it would be absurd to blame the State for whatever prejudice Key's own tactics may have caused him. Though the sentence imposed is severe, we conclude that Key suffered no prejudice to any interest protected by a speedy sentencing right under the sixth amendment.

### B.

■ Our analysis of Key's state constitutional challenge [4] parallels that of his federal claim. *See also Shockley v. State,* Del. Supr., 269 A.2d 778 (1970) (state speedy trial right interpreted in light of federal precedents); *State v. Cunningham,* Del.Super., 405 A.2d 706 (1979), *rev'd and remanded on other grounds,* Del.Supr., 414 A.2d 822 (1980) (table) (same); *State v. Walker,* Del.Super., 100 A.2d 413 (1953) (same). The only difference in determining Key's state rights is that his own actions weigh more heavily against him. This Court's comments in *Latson v. State,* Del.Supr., 146 A.2d 597, 601–02 (1958) are apposite:

> The long delay in bringing the defendant to trial was the direct result of the defendant's own actions. This is not said by way of criticism. Every defendant is entitled to insist upon every safeguard that the law throws around the conduct of a criminal cause. But if he elects to file motions raising preliminary legal questions he cannot reasonably say that the prosecution is delaying his trial.

*See Garner v. State,* Del.Supr., 145 A.2d 68, 75–76 (1958). It follows that Key has not established any violation of the speedy trial clause of article I, section 7 of the Delaware Constitution.

### III.

### A.

Delaware law provides two separate and unrelated standards for determination of habitual criminal status. One is applicable to a person previously convicted of three felonies and later convicted of a fourth. 11 *Del.C.* § 4214(a). *See Oney v. State,* Del. Supr., 446 A.2d 389, 393 (1982). The other is directed against people who have twice been convicted of specified felonies (or attempts) which involve death or a substantial risk to life, and then are convicted of a third such serious crime. § 4214(b). *See Oney,* 446 A.2d at 393. At any time between conviction [5] and sentence the Attorney General may move to have the defendant punished as an habitual criminal.[6] § 4215(b). *See also Ward v. State,* Del. Supr., 414 A.2d 499 (1980) (Attorney General may exercise normal principles of prosecutorial discretion when deciding whether to initiate proceedings). If it appears "to the satisfaction of the [Superior] Court at a hearing on the motion that the defendant falls within [11 *Del.C.* § 4214], the Court shall enter an order declaring the defendant an habitual criminal and shall impose sentence accordingly." § 4215(b). A "fourth offender" may, in the judge's discretion, be sentenced to life imprisonment without denial of parole. § 4214(a). Because of the more serious nature of the crimes that justify treatment as a "third offender," the judge has no discretion when sentencing such a defendant and must impose a life sentence without parole or probation. § 4214(b).

Citing *United States v. Maroney,* 355 F.2d 302 (3d Cir.1966) and *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), Key first argues that well-set-

---

4. He relies on the speedy trial provision of article I, section 7 of the Delaware Constitution, quoted in note 3, *supra.*

5. "Conviction" is defined by 11 *Del.C.* § 222(3) as "a verdict of guilty by the trier of fact, whether judge or jury, or a plea of guilty or a plea of nolo contendere accepted by the court". *See Pryor v. State,* Del.Supr., 453 A.2d 98

(1982) (definition of "conviction" used to enhance sentence for violations of the narcotics laws).

6. Though the Attorney General files the motion, the Superior Court judge may *sua sponte* ask that habitual criminal proceedings be initiated. 11 *Del.C.* § 4215(b).

tled principles of constitutional law require that a defendant in an habitual criminal proceeding be afforded those procedural protections essential to a fair trial. He then points to *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), guaranteeing the right to trial by jury as a fundamental protection when one is charged with a crime punishable by more than six months in jail. Thus, the argument runs, *Specht* anticipated the mandate of *Duncan* and allows a defendant to demand a jury trial on the issue of his status. In response the State contends that the federal constitutional right to a jury trial extends only to the adjudication of guilt, not of status. In addition, according to the State, any such federal right is derived from one's entitlement to a jury trial under state law, and there is no such right in connection with a determination of habitual criminal status in Delaware.

### B.

■ It is now axiomatic that habitual criminality is a status, not a separate criminal offense. The hearing required under section 4215(b) is held solely to determine the factual existence of prior convictions which will justify enhanced punishment. *Gibbs v. State,* Del.Supr., 208 A.2d 306, 308 (1965); *State v. Losieau,* Neb.Supr., 184 Neb. 178, 166 N.W.2d 406, 408 (1969); *Howard v. State,* Nev.Supr., 83 Nev. 53, 422 P.2d 548, 550 (1967). The extension of *Duncan v. Louisiana* that Key urges is thus inappropriate, since *Duncan* only establishes the right to a trial by jury for the purpose of deciding guilt or innocence. *State v. Williams,* La.Supr., 326 So.2d 815 (1976); *State v. Vale,* La.Supr., 252 La. 1056, 215 So.2d 811 (1968), *rev'd on other grounds,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Losieau,* 166 N.W.2d at 407. *See United States v. Neary,* 552 F.2d 1184 (7th Cir. 1977) [interpreting 18 U.S.C. § 3575 ("dangerous special offender" statute)]. Thus, we do not read article I, section 7 of the Delaware Constitution, insuring a right to trial by an impartial jury, as applicable to the determination of habitual offender sta-

tus. *See Mergenthaler v. State,* Del.Supr., 239 A.2d 635, 639 (1968); *Howard,* 422 P.2d at 550.

■ We also decline to interpret *Specht v. Patterson* as mandating an extension of the right to a jury trial in habitual criminal proceedings. *Specht* only says that a person facing habitual criminal proceedings must have reasonable notice of the State's intent to seek additional punishment, "be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed". 386 U.S. at 610, 87 S.Ct. at 1212. *See Bailey v. State,* Del.Supr., 450 A.2d 400 (1982). *See also Gardner v. Florida,* 430 U.S. 349, 358, 362, 97 S.Ct. 1197, 1204, 1206, 51 L.Ed.2d 393 (1977). Beyond that, the State is constitutionally free to adopt such methods for habitual criminal hearings as are most harmonious with "the particular jurisdiction's allocation of responsibility between court and jury ... [and are] best accommodated to the State's established trial procedures . . . ." *Spencer v. Texas,* 385 U.S. 554, 567, 87 S.Ct. 648, 655, 17 L.Ed.2d 606 (1967). The predecessor to section 4215, 11 *Del.C.* § 3912(b), expressly gave a defendant the right to a jury trial on the question of habitual criminality. *See Mergenthaler,* 239 A.2d at 638. That statute was repealed in 1971 (58 Del.Laws c. 497, § 2), and the General Assembly deleted the jury trial provision from the re-enacted version (the current section 4215), clearly intending to limit the privilege. *See* 73 Am. Jur.2d *Statutes,* §§ 236–37 (1974). In light of *Spencer,* the legislative decision is constitutional, and we have no place tampering with it.

### IV.

### A.

Key was indicted for the first degree robbery of Susan Gillen because of his display of a knife during commission of the

crime.[7] The count was incorporated by reference in the charge of kidnapping Susan, because defendant's seizure of this victim was an act in furtherance of a robbery.[8] Key was acquitted of this particular robbery, and because there was then no underlying felony to support the kidnapping charge, he was acquitted of the latter. The trial judge, however, proceeded to consider the culpability of the defendant for any lesser offense included within the crime of first degree kidnapping. The reason is a sound one. In this case a kidnapping charge could only be sustained by proof that it occurred to facilitate the "commission of [a] felony" [11 *Del.C.* § 783A(3)]. That element was removed upon Key's acquittal of the supporting robbery count. However, there is no such component in the crime of first degree unlawful imprisonment, and the trial court's inquiry soon centered on Key's culpability for this offense.[9]

Key argued that unlawful imprisonment was not a lesser included offense of first degree kidnapping since the former required the victim to have been held under circumstances exposing her to the risk of serious physical injury. According to Key, no such element exists in the crime of kidnapping. He also contended that the restraint necessary for unlawful imprisonment had to be done knowingly, while no

---

**7.** Under 11 *Del.C.* § 832(a),

> A person is guilty of robbery in the first degree when he commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
> (1) Causes physical injury to any person who is not a participant in the crime; or
> (2) Displays what appears to be a deadly weapon; or
> (3) Is armed with and uses or threatens the use of a dangerous instrument.

A person commits second degree robbery when, in the course of committing theft, he uses or threatens the immediate use of force upon another person with intent to:
> (1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or
> (2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

11 *Del.C.* § 831. The term physical injury "means impairment of physical condition or substantial pain". 11 *Del.C.* § 222(19). A deadly weapon, as defined by 11 *Del.C.* § 222(5), "includes any weapon from which a shot may be discharged, a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick". An "ordinary pocketknife" is a folding knife with a blade of 3 inches or less.
A dangerous instrument is "any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury". 11 *Del.C.* § 222(4).

**8.** The kidnapping statute, 11 *Del.C.* § 783A, provides:

> A person is guilty of kidnapping in the first degree when he unlawfully restrains another person with any of the following purposes:
> (1) To hold him for ransom or reward; or
> (2) To use him as a shield or hostage; or
> (3) To facilitate the commission of any felony or flight thereafter; or
> (4) To inflict physical injury upon him, or to violate or abuse him sexually; or
> (5) To terrorize him or a third person; and the actor does not voluntarily release the victim alive, unharmed and in a safe place prior to trial.

An unlawful restraint is one that is "contrary to law or . . . not permitted by law". 11 *Del.C.* § 222(22) (definition of unlawful). One restrains another by intentionally restricting his movements "in such a manner as to interfere substantially with his liberty by moving him from 1 place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent". 11 *Del.C.* § 786(a). The term intentionally, as used in the concept of restraint, requires that it be the conscious object of the defendant to cause the particular result, i.e., substantial interference with another's liberty. 11 *Del.C.* § 231(a)(1).

**9.** A person commits first degree unlawful imprisonment "when he knowingly and unlawfully restrains another person under circumstances which expose that person to the risk of serious physical injury". 11 *Del.C.* § 782. Serious physical injury is physical injury (see note 8, *supra*) "which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ". 11 *Del.C.* § 222(20).

express state of mind is an element of kidnapping. The judge held that restraint of the victim here by use or display of a weapon capable of causing death or serious physical injury would necessarily expose the victim to a risk of serious physical injury. He further concluded that the restraint needed to establish both crimes required the defendant to act intentionally, and that state of mind encompassed the explicit necessity of the defendant acting knowingly in order to commit unlawful imprisonment.

### B.

 A defendant may be convicted of an offense not charged in the indictment or information if that crime is included in an offense that is charged. *Mackie v. State,* Del.Supr., 384 A.2d 625 (1978); 11 *Del.C.* § 206(b). The test is whether "it is established by the proof of the same or less than all the facts required to establish the commission of the offense charged". 11 *Del.C.* § 206(b)(1).[10] Though this provision speaks of "facts," the analysis is actually one of comparing "the substantive statutes and the underlying definitions". *Upshur v. State,* Del.Supr., 420 A.2d 165, 169 (1980); *Poli v. State,* Del.Supr., 418 A.2d 985 (1980). *See Del.Crim.Code Comm.* 16 (1973).

 Unlawful imprisonment requires the defendant to have acted knowingly, and he must do so with respect to all elements of the offense. 11 *Del.C.* § 252. Thus, the defendant must be aware that he was restraining the victim, that the restraint was unlawful, and that circumstances existed which exposed the victim to the risk of serious physical injury. 11 *Del.C.* §§ 231(b), 782. *See* Model Penal Code § 212.2 comment 2, at 242 (1980). The kidnapping statute does not expressly prescribe the nature of a defendant's state of mind, and at first glance it may appear that kidnapping is proven by evidence of a less

culpable state of mind than is required in cases of unlawful imprisonment. However, restraint of another for purposes of kidnapping is achieved through intentional action [11 *Del.C.* § 786(a)], and as the trial judge correctly held, that state of mind is incorporated into the substantive statute. As defined by the Criminal Code, acting intentionally necessarily includes acting knowingly, and a conviction for unlawful imprisonment therefore does not require greater proof of state of mind than exists for kidnapping. *See* 11 *Del.C.* §§ 231(a) & (b), 253; *Del.Crim.Code Comm.* at 41.

We also conclude that the display of a deadly weapon, as alleged in Key's indictment for first degree robbery, necessarily exposed the victim to the risk of serious physical injury, an element of first degree unlawful imprisonment. A deadly weapon is obviously capable of causing death or serious physical injury, and the display of one when using or threatening an immediate use of force creates a risk that the victim will be killed or seriously injured. To establish the existence of such circumstances in this case, the State only had to prove that Key unlawfully restrained the victim under the circumstances which the record amply demonstrates involved a "risk of serious physical injury" to her. The trial judge's findings are supported by the evidence, and he properly concluded that first degree unlawful imprisonment was a lesser included offense of first degree kidnapping.

\* \* \*

AFFIRMED.

---

10. An offense is also included if:
 It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
 It involves the same result but differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.
11 *Del.C.* § 206(b)(2), (3).