# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 1912018583 |
| | ) | |
| SHANTASIA MALACHI, | ) | |
| | ) | |
| Defendant | ) | |

Date Submitted:  September 17, 2021
Date Decided:  October 14, 2021

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Upon consideration of the Motion to Dismiss filed by Defendant Shantasia Malachi ("Defendant"); the State's Response to Defendant's Motion to Dismiss; the Superior Court Criminal Rules; the facts, arguments, and authorities set forth by the parties; statutory and decisional law; and the entire record in this case, the Court hereby finds as follows:

## BACKGROUND

1. On December 2, 2019, Wilmington Police Department arrested Defendant on charges of Burglary Second Degree, Conspiracy Second Degree, Criminal Mischief and Terroristic Threatening.[1] Defendant was released on her own recognizance.

---

[1] Ultimately, Defendant was indicted on charges of Burglary First Degree, Conspiracy Second Degree, two counts of Harassment, Criminal Mischief and Terroristic Threatening.

1

2.    On February 11, 2020, Defendant filed a motion to dismiss due to lack of indictment.  The State subsequently indicted Defendant on March 2, 2020, and Defendant was arraigned on March 30, 2020.

3.    Defendant's first case review was scheduled for April 27, 2020 but was continued at the Court's request due to the Judicial Emergency arising out of the COVID-19 pandemic.[2]   Defendant's first case review was rescheduled for September 9, 2020.  Defendant submitted a waiver and requested her case be set for final case review.

4.    On July 29, 2021, the Court issued a scheduling order setting final case review for August 16, 2021 and trial for August 31, 2021.

5.    On the morning of August 31, 2021, the State notified the Court that one of its main witnesses – an alleged victim – had been exposed to a co-worker who tested positive that morning for COVID-19.  Although the witness did not display any symptoms, he was not vaccinated.  The Court held an emergency hearing whereby the State requested that the witness testify by Zoom, which the Defendant opposed.  The Defendant then moved to dismiss the case for lack of a speedy trial.

---

[2]    On March 13, 2020, the Chief Justice of the Supreme Court of Delaware declared a judicial emergency which closed the courthouse to all but essential personnel and foreclosed the availability of jury trials.  In the order, the Chief Justice specifically stated that "all time requirements under the Speedy Trial Guidelines are hereby tolled."  Order Declaring a Judicial Emergency, Seitz, C.J., (Del. Mar. 13, 2020).  The Chief Justice subsequently extended the declaration of emergency numerous times.

The Court denied the motion to dismiss but permitted the parties to submit additional briefing on the issue.

## ANALYSIS

6.      The Sixth Amendment to the Constitution of the United States provides: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial…."[3]  The Constitution of the State of Delaware provides a nearly identical right.[4]

7.      Defendant, citing the United States Supreme Court's decision in *Barker v. Wingo*,[5] claims that her speedy trial rights have been violated.  In *Barker*, the United States Supreme Court established a balancing test for assessing speedy trial claims weighing "the conduct of both the prosecution and the defendant."[6]  The Court in *Barker* identified four factors a court should weigh in determining whether a defendant's right to a speedy trial was violated: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant."[7]  No individual factor is conclusive.[8]  Instead, the

---

[3]     U.S. CONST. amend. VI.
[4]     DEL. CONST. art. I, § 7 ("In all criminal prosecutions, the accused hath a right…to have…a speedy and public trial….").
[5]     407 U.S. 514 (1972).
[6]     *Middlebrook v. State*, 802 A.2d 268, 273 (Del. 2002) (citing *Barker*, 407 U.S. at 530).
[7]     *Id.*
[8]     *Id.* (citing *Barker*, 407 U.S. at 533).

four factors are related "and must be considered together with such other circumstances as may be relevant."[9]  Thus, in weighing the factors, courts must engage in a "difficult and sensitive balancing process."[10]  The Court will examine each factor in turn.

8.      *Length of Delay*.  The Supreme Court of Delaware has held that "[t]he length of the delay is the trigger that necessitates the consideration of the other three *Barker* factors."[11]  Until there is a delay that is presumptively prejudicial, there is no requirement to assess the remaining *Barker* factors.[12]  The right to a speedy trial attaches "as soon as the defendant is accused of a crime through arrest or indictment, whichever occurs first."[13]  There is no specific delay that automatically violates the right to a speedy trial; rather, this factor will be considered on the peculiar circumstances of the case.[14]  The Supreme Court of Delaware, however, consistent with the United States Supreme Court, has found that delays in excess of one year are presumptively prejudicial thus requiring a full *Barker* analysis.[15]

---

[9]      *Id.*
[10]     *Barker*, 407 U.S. at 533.
[11]     *Dabney v. State*, 953 A.2d 159, 164 (Del. 2008).
[12]     *Id.*  (internal quotations omitted).
[13]     *Dabney*, 953 A.2d at 164-65 (quoting *Middlebrook*, 802 A.2d at 273).
[14]     *Id.* at 165 (quoting *Barker*, 407 U.S. at 530-31).
[15]     *Cooper v. State*, 32 A.3d 988, 2011 WL 6039613, at *7 (Del. 2011) (TABLE) (quoting *Doggett v. U.S.*, 505 U.S. 647, 652 n.1 (1992) ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year")).

9.      Here, the Defendant was arrested on December 2, 2019, and her first trial date was August 31, 2021 – over a year and a half after her arrest. The trial date has now been continued at the request of the State due to one of its witnesses being exposed to a co-worker who tested positive for COVID-19 on the morning of trial. Although the witness could not appear in person due to CDC guidelines, the State proposed to have the witness testify by Zoom. Defense counsel opposed, requiring trial to be moved to November 1, 2021. Had the witness testified by Zoom, the trial would have proceeded on the original trial date. Notably, prior to the morning of August 31, 2021, Defendant never moved to dismiss based on an alleged violation of her right to a speedy trial. Nonetheless, because trial is now moved to November 1, 2021 – nearly two years after her arrest – the delay is presumptively prejudicial, and the Court will consider the remaining *Barker* factors.

10.      *Reason for the Delay*. Each reason for delay will be weighed on a case-by-case basis.[16] For example, a "'deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the [State],' while a 'more neutral reason such as negligence or overcrowded courts should be weighted less heavily' against the State."[17] A valid reason, such as the disappearance or illness of

---

[16]      *Middlebrook*, 802 A.2d at 274 ("The flag all litigants seek to capture is the second factor, the reason for delay. Different weights are assigned to different reasons for delay.") (internal quotations omitted).
[17]      *Barker*, 407 U.S. at 531.

5

an important witness, or an event over which the prosecution has no control, may justify an appropriate delay and will not weigh against the State.[18] If, on the other hand, the "defendant is the primary cause for delay, this factor will weigh against [the defendant], in part because a defendant may be in a better negotiating position as witnesses (for the State or the defense) become unavailable or their memories fade."[19] It is well-established that "a defendant who prolongs a matter cannot then blame the result solely on the acts or omissions of the prosecution."[20]

11. Here, Defendant asserts that the COVID-19 pandemic is the primary reason for delay. Defendant argues that although the Superior Court has issued several Orders suspending jury trials based on the Chief Justice's Administrative Orders, the "statutory authority granted to the Chief Justice [pursuant to 10 *Del. C.* § 2004] does not provide authority to suspend or toll Defendant's constitutional rights to a speedy trial."[21]

---

[18] *Key v. State*, 463 A.2d 633, 636 (Del. 1983).

[19] *Harris v. State*, 956 A.2d 1273, 1276 (Del. 2008).

[20] *Butler v. State*, 974 A.2d 857, 2009 WL 1387610, at *2 (Del. May 19, 2009) (TABLE) (quoting *State v. Key*, 463 A.2d 633, 637 (Del. 1983)).

[21] Def.'s Mot. to Dismiss at 6. Section 2004(a) states, in relevant part, that "[t]he Chief Justice shall…have the authority, by order, to declare a judicial emergency when the Chief Justice determines that there are emergency circumstances affecting 1 or more court facilities or the ability to staff 1 or more court facilities. This determination shall be based upon emergency circumstances, including but not limited to….disease…resulting in the…ability to access courthouses, or the ability to staff courts."

12. This Court has already considered, and rejected, this argument in *State v. Rodriguez*.[22] In *Rodriguez*, the Court held that COVID-19 satisfies Section 2004's requirement that there be "emergency circumstances" from "disease" that affects the ability to access the courthouses and the ability to staff courts.[23] Pursuant to Section 2004, "the Chief Justice is authorized to toll the Speedy Trial guidelines during the duration of a judicial emergency."[24] The Court found that COVID-19 related safety considerations are reasonable justifications for delay and are not attributable to the State or the Court.[25] The Court, therefore, held that "[t]he Court's decision to take emergency health measures to limit the spread of…COVID-19 does not weigh against the State."[26] Defendant has provided no reason to depart from the holding in *Rodriguez* and the Court will not do so here.

13. The Court also notes that Defendant did not raise her speedy trial rights until *after* the State informed the Court that the witness was exposed to COVID-19. The State attempted to cure the unavailability of its witness by having him testify via Zoom, which Defendant opposed. Thus, the true impetus for the delay is more attributable to the Defendant rather than the State. The State was prepared to go forward with trial on August 31, but Defendant opposed. Defendant cannot prolong

---

[22] 2021 WL 1221461, at *2-3 (Del. Super. Mar. 30, 2021).
[23] *Id.* at *3.
[24] *Id.*
[25] *Id.* at *5-6.
[26] *Id.*

the matter then claim infringement on her right to a speedy trial. Therefore, this factor weights in favor of the State.

14. *Defendant's Assertion of the Right to a Speedy Trial.* If and when a defendant asserts her right is significant in determining whether there has been a speedy trial violation.[27] A defendant's failure to assert her right makes it more difficult to prove that she was denied a speedy trial.[28] Here, Defendant first asserted her speedy trial right on the morning of trial on August 31, 2021 and supplemented it by formal motion on September 10, 2021. This factor weighs in favor of Defendant because she has timely asserted her right to a speedy trial.

15. *Prejudice to the Defendant from the Delay.* In analyzing the prejudice prong, the Court must consider the "interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired."[29] Defendant argues she is prejudiced under the second and third interests.[30]

---

[27]  *Middlebrook*, 802 A.2d at 275 (citing *Bailey v. State*, 521 A.2d 1069, 1082 (Del. 1987)).
[28]  *Id.*
[29]  *Middlebrook*, 802 A.2d at 276 (citing *Barker*, 407 U.S. at 532).
[30]  Defendant has been out on her own recognizance since her arrest and therefore cannot claim that she has been oppressively incarcerated pre-trial.

16. The impairment to a defense is the most serious type of prejudice because a defendant's inability to prepare adequately for trial "skews the fairness of the entire system."[31] Defendant, citing the four-year delay in *Middlebrook*, argues that the memories of the witnesses will likely fade causing her prejudice. Again, curiously, Defendant only moved to dismiss based on her speedy trial right on the first day of trial after the State's witness was exposed to COVID-19. Trial is now scheduled for November 1 – a mere two months after trial was initially set to begin. Defendant has not indicated why the additional two months would cause any substantial fading of memories such that it would be prejudicial to her. "Insubstantial, speculative, or premature claims of possible prejudice will not suffice."[32] The State has also indicated it plans to introduce 911 calls made contemporaneously with the indictment in which the witnesses describe the event.

17. Defendant further argues that she is prejudiced because she has experienced difficulty in obtaining employment and that her unemployment benefits will soon end. Defendant has not specified when her unemployment benefits will end, detailed her attempts to obtain employment, nor provided any support beyond bare assertions that the pending case is preventing employment. Defendant's vague statements do not demonstrate prejudice satisfying the fourth *Barker* factor.

---

[31] *Middlebrook*, 802 A.2d at 276 (citing *Barker*, 407 U.S. at 532).
[32] *Rodriguez*, 2021 WL 1221461, at *7 (citing *United States v. Ewell*, 383 U.S. 116, 122 (1966)).

9

18.     Finally, Defendant argues she has been suffering psychologically and has experienced anxiety.  This statement, without more, does not satisfy the fourth *Barker* factor.[33]  As the Supreme Court of Delaware recognized in *Fensterer*, all defendants face some degree of anxiety while awaiting trial, whether incarcerated or not.[34]  This does not constitute prejudice unless the defendant shows excessive concern or anxiety.[35]  Defendant has been out on her own recognizance since her arrest.  Defendant has presented no evidence that she has suffered an unusual amount of anxiety because of the delay.  Therefore, the fourth *Barker* factor weighs in favor of the State.

19.     After balancing the *Barker* factors, this Court finds that Defendant's right to a speedy trial has not been violated.  The only factor that weighs in favor of

---

[33]     *See Fensterer v. State*, 493 A.2d 959, 966-67 (Del. 1985) ("To sum up the prejudice factor, with no pre-trial incarceration, no more than normal anxiety and little impairment of the ability of the defense to present its case, this factor weighs in favor of the state"); *see also Stovall v. State*, 707 A.2d 767, 1998 WL 138931, at *4 (Del. Feb. 27, 1998) (TABLE) ("[T]here is no evidence that the defendant suffered an unusual amount of anxiety as a result of the delay"); *see also Rodriguez*, 2021 WL 1221461, at *6 (noting that, in considering the second interest of the prejudice prong "this factor should be weighed in defendant's favor only where the…anxiety suffered is undue or otherwise disproportionate.  Moreover, it should be a defendant's burden to demonstrate and substantiate any undue or otherwise disproportionate… anxiety").

[34]     *Fensterer v. State*, 493 A.2d at 966-67; *Stovall*, 1998 WL 138931, at *4.

[35]     *Id; Rodriguez*, 2021 WL 1221461, at *6; *see also Cooper*, 2011 WL 6039613 ("The second interest does not weigh in Cooper's favor, as Cooper has not alleged excessive concern or anxiety").

Defendant is the length of delay since her arrest. The other factors are either neutral or favor the State. Therefore, dismissal of Defendant's case is not warranted.

**IT IS SO ORDERED**.

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**