IN THE SUPREME COURT OF THE STATE OF DELAWARE

ISAIAH BOYKIN, §
§ No. 442, 2024
   Defendant Below, §
   Appellant, § Court Below–Superior
§ Court of the State of
   v. § Delaware
§
STATE OF DELAWARE, § Cr. ID No. N2203013250 A/B
§
   Appellee. §
§

Submitted: October 15, 2025
Decided: December 17, 2025

Before **VALIHURA**, **TRAYNOR**, and **GRIFFITHS**, Justices.

### <u>**ORDER**</u>

After careful consideration of the parties' briefs and the record on appeal, and following oral argument, it appears to the Court that:

(1) Isaiah Boykin appeals his criminal convictions, claiming that the Superior Court violated his constitutional right to a speedy trial. Boykin remained in custody for nearly two years before his trial was held. The delay was the product of three trial continuance requests that were initiated by the State but to which Boykin did not object. For the reasons that follow, we conclude that there was no violation of Boykin's right to a speedy trial and therefore affirm his convictions.

(2)     Boykin was arrested on April 7, 2022.[1]  A grand jury indicted Boykin on August 15, 2022.  The indictment contained the following counts:  one count of first-degree home invasion-burglary; one count of first-degree attempted robbery; one count of second-degree conspiracy; one count of second-degree assault; one count of possession of a firearm during the commission of a felony; one count of terroristic threatening; and six other counts that were later severed or dropped.[2]  The Superior Court scheduled Boykin's trial for March 20, 2023, but the trial was delayed three times.[3]

(3)     The first delay was due to the unavailability of Boykin's co-defendant. The co-defendant's attorney had a scheduling conflict with the trial date and needed a continuance.[4]  The State, on behalf of all the parties (including Boykin), submitted the continuance request to the court.[5]  The Superior Court granted the continuance request, postponing the trial until late May 2023.[6]

(4)     The second delay occurred when the State asked for another continuance.  Detective Christopher Skrobot, one of the State's witnesses, reported

---

[1] Appendix to Opening Br. at A1 [hereinafter as "A_"] (Super. Ct. Crim. Dkt. No. 1 [hereinafter "Dkt."]).

[2] Dkt. No. 4; *see also* A13–18 (Indictment by the Grand Jury).

[3] A2–5 (Dkt. Nos. 8, 19, 25, 28–29).

[4] Appendix to Answering Br. at B1 [hereinafter as "B_"] (Continuance Req. dated Mar. 9, 2023).

[5] *Id.*

[6] A3 (Dkt. No. 19).

that his wife expected to give birth in late May 2023 and that he would likely be on family leave during the trial.[7] The State offered to replace Detective Skrobot with Detective Daniel Vucci, who did not have personal knowledge of the facts but was otherwise familiar with Detective Skrobot's work on the case. Boykin rejected the State's offer to substitute Detective Skrobot but did not oppose the continuance request.[8] The Superior Court postponed the trial for four months, setting trial for September 11, 2023.[9]

(5) The third delay occurred on August 29, 2023, when the State asked for another continuance because Detective Skrobot had not yet returned from family leave.[10] To avoid further delay, the State offered to arrange for Detective Skrobot to testify remotely. Boykin rejected this alternative, but did not oppose the continuance request.[11] The court took the matter under advisement; no trial date was set at this time.

(6) Seven weeks later, on October 19, 2023, the parties appeared for a scheduling conference.[12] At the conference, Boykin, for the first time, asserted his

---

[7] B4–5 (Continuance Req. dated Aug. 29, 2023).

[8] *Id.*

[9] A4 (Dkt. No. 25).

[10] B4–5 (Continuance Req. dated Aug. 29, 2023).

[11] *Id.*

[12] A4–5 (Dkt. No. 28).

right to a speedy trial and demanded dismissal of the charges against him.[13] The Superior Court did not rule on the request—because Boykin had not filed a motion—and instead set trial for March 4, 2024.[14]

(7) Boykin filed a motion for speedy trial on January 18, 2024.[15] The Superior Court denied the motion, reasoning that "[Boykin's] failure to assert that right at an earlier time and acquiesce to the continuance requests weigh[ed] against him,"[16] and that Boykin had not shown substantial prejudice caused by the delay.[17] Boykin's trial started, as scheduled, on March 4, 2024. The trial lasted seven days. A jury acquitted Boykin of the terroristic threatening charge but convicted him on all other charges.[18] Boykin was subsequently sentenced to 14 years of incarceration followed by probation.[19]

(8) On appeal, Boykin claims that the Superior Court violated his right to a speedy trial when it granted the State's second and third continuance requests.[20] It is undisputed that these continuances were necessitated by the unavailability of the

---

[13] *See State v. Boykin*, 2024 WL 772557, at *3 (Del. Super. Feb. 26, 2024) [hereinafter "*Opinion _*"].

[14] A5 (Dkt. No. 29).

[15] A5 (Dkt. No. 30).

[16] *Opinion* at *3.

[17] *See id.*

[18] A6 (Dkt. No. 38).

[19] Appellant's Opening Br. 1 [hereinafter "Opening Br."].

[20] Boykin does not take issue with the first delay, as it was jointly requested by all parties.

State's witness, Detective Skrobot.[21] In response, the State points out that Boykin refused two options to avoid scheduling delays—(a) replacing Detective Skrobot with Detective Vucci, or (b) allowing Detective Skrobot to testify remotely. The State contends that Boykin's insistence that Detective Skrobot testify in-person was the true cause of the delay.[22]

(9) The Delaware and United States Constitutions both protect a criminal defendant's right to a speedy trial.[23] We review claims alleging infringement of a constitutionally protected right *de novo*.[24] When determining whether a criminal defendant's constitutional right to a speedy trial is violated, we consider and weigh the following four factors set forth in *Barker v. Wingo*:[25] (a) the length of delay; (b) the reason for the delay; (c) the defendant's assertion of his right; and (d) prejudice to the defendant.[26] Furthermore, "[w]e regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of

---

[21] Opening Br. 2 (arguing that "Boykin was denied his rights to a speedy trial when, as the result of the State's repeated continuance requests to accommodate one of its [witnesses] . . . [Boykin] was prevented from going to trial until nearly 2 years after his arrest.").

[22] Appellee's Answering Br. 17–18 [hereinafter "Answering Br."].

[23] Del. Const., art. 1, § 7; U.S. CONST. AMEND. VI.

[24] *Dabney v. State*, 953 A.2d 159, 163 (Del. 2008) (citation omitted).

[25] 407 U.S. 514 (1972).

[26] *Johnson v. State*, 305 A.2d 622, 623 (Del. 1973) (citing *Barker*, 407 U.S. at 530 (1972)).

the right of speedy trial."[27]  Rather, "courts must . . . engage in a difficult and sensitive balancing process."[28]

(10)  We first consider the length of delay.  There is no precise time-period that uniformly triggers a speedy trial analysis.[29]  If the delay between arrest or indictment (whichever occurs first) and trial exceeds one year, we generally proceed to consider the other *Barker* factors.[30]  Here, Boykin was arrested on April 7, 2022, indicted on August 15, 2022, and tried on March 4, 2024.  Thus, almost two years lapsed between his arrest and trial.  The State concedes that the first factor "weighs in Boykin's favor" and that the gap of time in this case "warrants review of the other [*Barker*] factors."[31]  Therefore, we find that the first factor favors Boykin and continue our analysis under the *Barker* factors.

(11)  We next consider the reason for delay.  We have held that "[d]ifferent weights are assigned to different reasons for the delay."[32]  If the State intentionally caused the delay to undermine the defense, then that attempt is weighed heavily against the State.[33]  However, if the State is merely negligent or the courts are

---

[27] *Barker*, 407 U.S. at 533.

[28] *Id.*

[29] *Skinner v. State*, 575 A.2d 1108, 1116 (Del. 1990) (citing *Barker*, 407 U.S. at 530).

[30] *Cooper v. State*, 2011 WL 6039613, at *7 (Del. Dec. 5, 2011) (citations omitted).

[31] Answering Br. 14.

[32] *Middlebrook v. State*, 802 A.2d 268, 274 (Del. 2002).

[33] *Id.*

6

overcrowded, then those more neutral reasons are not weighed as heavily.[34] Similarly, "a valid reason, such as a missing witness, may justify appropriate delay and will not weigh against the State."[35] On the other hand, if a delay was caused by the defendant, then the defendant "cannot [] blame the result solely on the acts or omissions of the prosecution."[36]

(12) The second and third delays were caused by the unavailability of a State witness. The State provided a justifiable reason for the delays—the witness would be on family leave. The State also proposed alternatives, which Boykin rejected. Under these circumstances, we do not weigh this factor against the State. However, neither does this factor weigh against Boykin. He validly exercised his constitutional right to confrontation when he rejected the State's offer to replace Detective Skrobot with a witness who lacked personal knowledge of the facts and insisted on cross-examining Detective Skrobot in person. Although the right to meet a witness face-to-face is not an indispensable element of the Sixth Amendment,[37] it

---

[34] *Id.*

[35] *Id.*

[36] *Key v. State*, 463 A.2d 633, 637–38 (Del. 1983) (citations omitted); *see also Butler v. State*, 2009 WL 1387640, at *2 (Del. May 19, 2009) ("[A defendant] cannot complain about the result of his exercise of [a procedural] right.").

[37] *Maryland v. Craig*, 497 U.S. 836, 849–50 (1990) (ruling that "though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers. . . . [T]here are circumstances that excuse compliance with the right of confrontation").

remains important, and no individual should feel pressured to surrender one constitutional right in fear of losing another.[38] Therefore, we do not hold Boykin's refusal to agree to the State's proposed alternatives against him.[39] This factor is neutral.

(13)  We next consider when Boykin first asserted his right to a speedy trial. Although his initial failure to assert his right does not prevent him from raising the issue later, a "defendant does have some responsibility to call attention to what he views as an unfair postponement.'"[40] That is, a defendant cannot wait silently for a prolonged period of time and then later claim time is essential.  Boykin remained

---

[38] *See, e.g., Lefkowitz v. Cunningham*, 431 U.S. 801, 807–08 (1977) (holding that a New York law was coercive and thus unconstitutional because "it requires [an individual] to forfeit one constitutionally protected right as the price for exercising another").

[39] The State argues that it was Boykin's insistence that Detective Skrobot testify in person that caused the delay.  To support its argument, the State cites to *State v. Malachi*, where the Superior Court held:

> The State attempted to cure the unavailability of its witness by having him testify via Zoom, which Defendant opposed. Thus, the true impetus for the delay is more attributable to the Defendant rather than the State. . . .  Defendant cannot prolong the matter then claim infringement on her right to a speedy trial. Therefore, this factor weighs in favor of the State.

*State v. Malachi*, 2021 WL 4805515, at *3 (Del. Super. Oct. 14, 2021).

The State contends that we should follow the reasoning of *Malachi* and find that the "reason for delay" factor tips in the State's favor.  *See* Answering Br. 18.  We disagree.  A criminal defendant's right to confront a witness is protected by the Sixth Amendment of the U.S. Constitution, which applies to the states through the Fourteenth Amendment.  Moreover, both the U.S. Supreme Court and this Court have repeatedly emphasized the strong preference for "face-to-face" confrontation at trial.  *See, e.g.*, *McGriff v. State*, 781 A.2d 534, 539 (Del. 2001) (recognizing "[the Sixth Amendment] has been interpreted to express a preference for the in-court testimony of witnesses") (citing *Ohio v. Roberts*, 448 U.S. 56, 63–64 (1980)).

[40] *Key*, 463 A.2d at 637 (quoting *Barker*, 407 U.S. at 528, 532).

8

silent for nearly eighteen months after his arrest. During this time, the State requested to postpone the trial twice to accommodate Detective Skrobot, and Boykin did not oppose those continuance requests. Boykin concedes that he did not raise his speedy trial rights before raising them at the October 2023 scheduling conference.[41] Tellingly, Boykin further concedes that "[he] may not have asserted his right as early as one would have hoped."[42] Given the fact that Boykin did not assert his right to a speedy trial when the delays occurred, we find this factor weighs in favor of the State.

(14) Last, we consider the prejudicial effect of the delay on Boykin. The *Barker* Court explained that prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."[43] It went on to identify three such interests: (a) to prevent oppressive pretrial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired.[44] Boykin bases his argument solely on the second interest—to minimize anxiety and concern of the accused. Boykin claims to have suffered from "presumptive[] anxiety" due to the delay, but has not accompanied

---

[41] *See Opinion* at *1.

[42] Appellant's Reply Br. 2.

[43] *Barker*, 407 U.S. at 532.

[44] *See id.*

this assertion with any evidence.[45] We must acknowledge, as we did before, that "time spent in jail awaiting trial by one presumed innocent until proven guilty often means loss of a job, disrupts family life, and enforces idleness."[46] "Imposing these consequences on anyone who has not yet been convicted is serious."[47] Nevertheless, the negative impact that might be generally experienced by all criminal defendants does not necessarily warrant a legal finding of prejudice. Due to the absence of prejudice to Boykin, we find this factor in favor of the State.

(15) In sum, after carefully considering the *Barker* factors, we find that Boykin's right to a speedy trial was not violated. Boykin failed to raise his speedy trial right when the delays occurred and failed to show that he has suffered prejudice. These failures, under the facts of this case, significantly outweigh the "length of delay" factor—the only factor on which Boykin prevailed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[45] Opening Br. 20–21.

[46] *Middlebrook*, 802 A.2d at 276.

[47] *Id*.

10